UNITED STATES of America, for the Use of Walter G. ALTMAN, et al., Plaintiffs,

v.

YOUNG LUMBER COMPANY et al., Defendants.

RUSCON CONSTRUCTION COMPANY and Travelers Indemnity Company of Hartford, Connecticut, Third Party Plaintiffs,

v.

The PEOPLES BANK OF BEAUFORT, SOUTH CAROLINA, Third Party Defendant.

Civ. A. No. 73–1062.

United States District Court, D. South Carolina, Charleston Division.

June 11, 1974.

James H. Moss, Moss, Carter & Branton, Beaufort, S. C., for plaintiff.

T. E. Pedersen, Charleston, S. C., for defendants.

Charles B. Macloskie, Harvey, Battey, Macloskie & Bethea, Beaufort, S. C., for defendant Young Lumber Co.

## ORDER

SIMONS, District Judge.

This action was instituted pursuant to 40 U.S.C. § 270b, commonly referred to as the Miller Act, alleging claims based upon the rental of a bulldozer and tractor to the defendant, Young Lumber Company, while Young Lumber Company was a sub-contractor to the defendant, Ruscon Construction Company, in the construction of two barracks at Parris Island, South Carolina, for the United States Navy. The Peoples Bank of Beaufort, S. C., was made a third-party defendant by the defendants, who alleged that the bank had agreed to indemnify Ruscon Construction Company against the claim of the plaintiffs herein.

This matter was tried before the court without a jury at Charleston on April 1, 1974. Thereafter, counsel for the parties submitted proposed orders and memoranda. This memorandum of decision shall constitute the court's findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure.

Certain factual matters are not in dispute. In late 1970, the defendant, Ruscon Construction Company (hereinafter "Ruscon") entered into a contract with the United States by the terms of which Ruscon was to act as general contractor for the construction of two barracks for the United States Marine Corps at Parris Island, S. C. The defendant Young Lumber Company ("Young Lumber") was issued a subcontract for the performance of certain clearing, grading, demolition, paving, sewer and drain installation, and grassing and landscaping. Pursuant to the Act, Ruscon was required to furnish a payment and performance bond, and the defendant Travelers Indemnity Company ("Travelers") acted as the bonding company for Ruscon.

As the subcontract began to be performed in January 1971, the plaintiff Altman and the defendant Young were associated, and the nature of that relationship is one of the issues raised in this proceeding. Both Altman and Oscar Young, former president of Young Lumber, testified that Altman was to be Young's superintendent on the job. It was Altman who had estimated the job for Young. Young and Altman were to receive an equal salary by check on a weekly basis during the job, and at the end of the job they were to split the profits. Altman testified that he had no ownership in Young Lumber Company, and that he was its employee. Young testified that the two men had planned for Altman to buy stock in and become an officer of the company, and to this end Altman paid Young Four Thousand ($4,000.00) Dollars. However, negotiations fell through and Young refunded Altman's Four Thousand ($4,000.00) Dollars.

Some time during the performance of the subcontract, a source who was supposed to supply equipment to Young defaulted on its agreement, and Altman brought on the job the tractor and bulldozer in dispute. It is Altman's contention that at this time he and Young entered into an oral agreement whereby Young agreed to pay Altman a reasonable rental for this equipment. According to Young, nothing was said about equipment rental when Altman brought this machinery on the job; Young spe-

cifically denies that there was any understanding at all between he and Altman as to the rental of this equipment. It is for the rental value of these two pieces of machinery that this suit is brought.[1]

Altman submitted bills to Young Lumber asserting that the tractor and its attachments were used on the job from May to November 1971, and from March to August 30, 1972, for which Altman claims a rental value of Four Thousand, Eight Hundred ($4,800.00) Dollars. The bulldozer is shown by the invoice to have been on the job from February 1, 1971, to August 30, 1972, for which Altman billed Young Lumber rental value of Fifteen Thousand, Two Hundred ($15,200.00) Dollars. Thus the last date for which equipment rental is claimed by plaintiff is August 30, 1972.

Young testified that the subcontract eventually "started to go sour" and that when the job was over, he was approximately $50,000 deeper in debt than he was when the job began. Apparently because of these financial difficulties, Young Lumber left the job sometime in August, 1972. Although the project was very nearly complete at that time, there remained some grading, top soiling, and grassing to be completed and curbing was to be adjusted, according to Altman's testimony. Altman agreed to perform this work, but required payment in advance. Therefore, Young deposited with Ruscon project superintendent Joe Wooten One Thousand ($1,000.00) Dollars for project completion, and when

Altman completed this work on or about September 8, 1972, Wooten paid him the One Thousand ($1,000.00) Dollars. Thus although Altman did work on the project after August 30, that is the last date for which he claims monies due from Young Lumber for the rental of his equipment.

In compliance with the Act's requirements, Altman notified defendant Ruscon in September, 1972, that plaintiff looked to it for payment of Twenty Thousand ($20,000.00) Dollars allegedly due as rental for the equipment. Ruscon contends, and the court does not understand plaintiff to dispute, that Ruscon has paid Young in full for the subcontract. Plaintiff's complaint against Young Lumber, Ruscon, and Travelers was filed in this court on August 31, 1973. Ruscon and Travelers thereafter filed a third party complaint against the Peoples Bank of Beaufort on the basis of an indemnity agreement. The bank admits its liability in the event a judgment is rendered against Ruscon and Travelers.

█ The defendants collectively rely on three defenses: (1) that the Miller Act statute of limitations providing that no suit shall be brought after the expiration of one year after the date on which the last labor or material was supplied bars plaintiff's claim in this case; (2) that plaintiff Altman and the defendant Young Lumber were either partners or joint venturers in the performance of this subcontract, and that as Ruscon has paid Young in full for

1. There was some controversy at the trial as to who was the proper party to make a claim for the use of the equipment. Altman first testified that he purchased the equipment and listed the owner on the bill of sale as his wife, Mrs. L. H. Altman. He stated that in all transactions involving the use, rental or operation of the equipment, he acted as his wife's agent and handled such arrangements himself. Altman later recanted to the extent that he was uncertain whether the title to the equipment was in his wife, or in A & E Contractors, Inc. ("A & E"). Altman explained that A & E was a close corporation, fifty percent of the stock being owned by his wife, Mrs. L. H. Altman, and the other half being owned by Mrs. O. C. Eaddy. Apparently the actual operation of A & E was handled by the two stockholders' husbands; Altman testified that he was vice-president and general manager of the corporation. Altman stated that A & E was "allowed to die," and that the equipment was returned to him for money owed him by the corporation. Regardless of who was the legal owner of the equipment during the period in question, all entities who could have been owners—Walter G. Altman, L. H. Altman, or A & E Contractors, Inc.—are parties plaintiff.

performance of the subcontract, Altman's claim is thereby barred; and (3) that there simply was no contract, expressed or implied, between Altman and Young for the rental of Altman's equipment.[2] These defenses will be discussed seriatim.

*Timeliness of suit.* As to time for institution of suit, the Miller Act provides in pertinent part as follows:

> "[N]o such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied. . . ." 40 U.S.C. § 270b(b).

As plaintiff concedes that the period for which he seeks equipment rental ceased on August 30, 1972, and as the complaint instituting this action was not filed until August 31, 1973, defendants contend that the action is barred by the Act's statute of limitations.

■ Defendants cite cases to the effect that minor activity performed by a subcontractor within one year of the bringing of the suit does not constitute work performed within the meaning of the Act when such additional work was done merely for the purpose of correcting defects or making repairs. While this proposition appears to be correct, the testimony convinces the court that the work done by Altman after August 30 was more than simply making corrections; although the contract at that time was virtually completed, there remained certain items of work still to be performed which were called for in the subcontract.

■ The defendants seem to take the position that the limitation period beings to run as of the last date of furnishing labor for which claim is made. That is, defendants contend that the work done by Altman in September does not postpone the commencement of the running of the statute, since Altman was paid in advance for the September work and makes no claim for it here. However, such a contention was specifically rejected in General Electric Co. v. Southern Construction Co., 383 F.2d 135 (5th Cir. 1967), cert. den. 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968), which is apparently the leading case on this point. See Annotation, "Construction and Application of Miller Act Provision Limiting Time for Suits on Payment Bond," 10 A.L.R.Fed. 553 (1972) at § 6. The court in *Southern Construction* specifically held that the one-year limitation period of the Act begins to run against a materialman or one who supplies labor from the date of supplying the last material or labor for use in the project, and not from the date of supplying the last material or labor for which claim is made. Thus under this case, plaintiff could have timely filed his suit in early September, 1973, and the August 31 filing comes within the Act's limitation.

■ Even if the rule of *Southern Construction* is not applied and August 30 is considered the last date of Altman's supplying materials or labor, the suit is still timely. Rule 6(a), Federal Rules of Civil Procedure, applies to the Miller Act limitation. In pertinent part, the rule states:

> "In computing any period of time prescribed or allowed by these rules . . . or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday."

Thus, applying Rule 6(a) to the Act, the period begins to run on the day *after* the end of the performance of labor.

---

2. Defendants do not dispute that a claim for equipment rental is a valid Miller Act claim. The cases so hold. *See, e. g.*, United States for the Use and Benefit of Malpass Construction Co. v. Scotland Concrete Co., 294 F.Supp. 1299 (E.D.N.C.1968).

See cases collected in Annotation, *supra*, 10 A.L.R.Fed. 553 at § 8.[3] Thus if the last day labor was performed was August 30, 1972, the period commenced to run on August 31, and a suit filed on August 31, 1973, is timely.

*Joint Venture.* The defendants next contend that the plaintiff and Young Lumber were either joint venturers or partners, in either event the payment by Ruscon to Young Lumber of the complete subcontract price acting as a bar against Altman's claim.[4] In argument to the court at the conclusion of the trial, plaintiff's attorney contended that Altman and Young Lumber's relationship was that of joint venturers on the subcontract, but that the rental of the equipment was a separate agreement from the joint venture. In his post-trial brief, plaintiff now takes the position that Altman was merely an employee of Young.

Evidence adduced at the trial tending to support the existence of a joint venture includes the agreement between Altman and Young to share profits, that Altman was to run the job as general superintendent, that Altman estimated the job for Young Lumber, and that Mr. Wooten, Ruscon's superintendent, was "under the impression" that Altman and Young were partners. Evidence tending to indicate that there was no joint enterprise was that all bills were received and disbursed in the name of Young Lumber, all employees were paid from the account of Young Lumber, and all contracts were entered into in the name of Young Lumber. Further, Young testified that he and Altman had no understanding at all about losses.

An early annotation on joint adventures, 48 A.L.R. 1055 (1927), stated general rules which remain viable today. To constitute a joint venture, there must be an agreement to share in the profits and losses. An agreement to share in profits and losses is not alone sufficient; there must be additionally an intention of the parties to be associated together as general or limited partners. Before a joint venture can exist, each party to the undertaking must be accountable to the other for his acts in carrying it out, and each must have a power of control. The annotation discussed one case which held:

"[A]n agreement by one holding a construction contract, in consideration of the cooperation and assistance of others in the prosecution of the contract work, to divide a portion of the profits equally among them, did not establish the relationship of joint adventurers between the parties to the contract, as the plain interpretation is that the enterprise was to remain the contractor's, and that what he promised was to pay the others for services, and not profits as partners." 48 A.L.R. at 1075.

A South Carolina case, discussing joint adventure in the context of the relationship between an automobile driver and passenger, states:

"It has been repeatedly held by this court that in order to constitute a joint enterprise . . . there must be a common purpose and a community of interest in the object of the enterprise and an equal right to direct and control the conduct of each other with respect thereto." Spradley v.

3. The case cited by defendants Ruscon and Travelers in their trial brief, United States to the Use of Engineering and Equipment Company, Inc. v. Wyatt, 174 F.Supp. 260 (N.D.Fla.1959), is not inapposite to the authorities reviewed in the annotation.

4. Plaintiff opposes consideration of this defense, contending that the assertion that plaintiff's claim is barred by a joint venture is an affirmative defense which is required to be raised in the pleadings by Rule 8(c). The court can locate little helpful authority dealing with whether joint venture must be pleaded as an affirmative defense under the rule. *See generally* Wright and Miller, Federal Practice and Procedure § 1271; 2A Moore's Federal Practice § 8.27. Thus the defense will be treated on the merits.

Houser, 247 S.C. 208, 146 S.E.2d 621 (1966).

48 C.J.S. Joint Adventures § 2, states the general rule:

"[I]n order to constitute a joint adventure there must be a community of interest in the performance of a common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and a duty to share in any losses which may be sustained."

This authority states that the sharing of losses is necessary to constitute a joint adventure, and whether or not there is an agreement to share in losses is "an important test" in determining whether or not a joint adventure exists.

Miller Act cases treating the concept of joint ventures include St. Paul-Mercury Indemnity Co. v. United States, 238 F.2d 917 (10th Cir. 1956), and United States for Use and Benefit of Gulfport Piping Co. v. Monaco and Son, Inc., 222 F.Supp. 175 (D.Md.1963) rev'd. on other grounds, 336 F.2d 636 (4th Cir. 1964). In *St. Paul-Mercury*, the court stated that an agreement to divide profits does not necessarily create a partnership relation; that the true relationship must be determined by the conduct of the parties, together with all other material facts and circumstances; that whether or not one is to share in the losses is a significant factor; and that one's control over the work is an important consideration. In *Gulfport Piping*, the court wrote: "A splitting of profits, without provision for a sharing of losses, does not, of itself, establish a joint venture." 222 F.Supp. at 184.

The burden of proof to establish the relationship of joint adventurers is on the party who alleges the existence of the relation. 48 C.J.S. Joint Adventures § 12h. In this case that burden fell on the defendants, and, under the authorities reviewed above, the court concludes that they have failed

to carry their burden. The vital agreement to share losses was absent in this arrangement. Although Altman was Young Lumber's general supervisor on the job, there is no evidence that he had an equal right to direct and control the conduct of the enterprise with Young Lumber. In short, the court finds and concludes, based on the applicable principles of law and the evidence adduced at trial, that Altman was an employee of Young Lumber, and not a partner or a joint adventurer with it.

*Existence of contract.* The failure of the defendants' previous assertions brings the court to the merits of the controversy, that is, whether there was in fact an agreement between Altman and Young Lumber that the latter would pay the former for the rental of his equipment. Plaintiff contends that there was an oral agreement between Altman and Young to this effect; alternately, he relies on the theory of *quantum meruit*, in that where Young Lumber accepted the benefits of plaintiff's equipment, the law should imply a duty of Young Lumber to pay for such use.

The testimony regarding the alleged oral contract is directly contradictory. Altman testified that he and Young reached an oral agreement whereby Altman would furnish the bulldozer and tractor, and Young would pay a reasonable monthly rental for the use of the equipment, to be billed upon completion of the job. Young testified that Altman never mentioned the subject of equipment rental to him, and that their only agreement was that Altman was to receive a weekly salary and a percentage of the profits upon completion of the project. The court was convinced by Young's testimony that the topic of equipment rental was never broached between the two men, and thus the court finds and concludes that there was no oral agreement between Altman and Young for the payment by Young for the rental value of Altman's equipment.[5]

---

5. This finding renders inapplicable cases such as St. Paul-Mercury Indemnity Company v.

United States, 238 F.2d 917 (10th Cir. 1956), and United States to Use of Roig v.

Citing well settled principles, the plaintiff contends that even if there was no express oral agreement for equipment rental, an implied contract may be inferred from the conduct of parties. Implied contracts arise by legal inference and upon principles of reason and justice from certain facts, or where there is circumstantial evidence showing that the parties intended to make a contract. Where one performs for another a useful service of a character that is usually charged for, and such service is rendered with the knowledge and approval of the recipient who either expresses no dissent or avails himself of the service rendered, the law raises an implied promise on the part of the recipient to pay the reasonable value of such service. 66 Am.Jur.2d Restitution § 24.

The court concludes that such a contract is implied in law here. Young testified that at the outset of the performance of this subcontract, he was renting equipment from one Buster Gay and paying him an hourly rate. When Gay defaulted, Altman brought his equipment onto the job site to be used in the prosecution of the project. Young did not deny the presence of plaintiff's equipment, nor that it was used in the completion of the subcontract. Young pointed out that he, too, furnished equipment for this job, for which he received no rental. Were the relationship between Young and Altman that of partners or joint venturers, it would be reasonable that if one partner or joint venturer was not to receive rents, than neither should the other. However, the court has specifically found and concluded that no such relationship existed between these parties. Altman was merely an employee, albeit an important one, of Young Lumber. In this capacity as employee, he brought his machinery onto the job and used it for the completion of the project, to his employer's benefit. Even though there was no express contract between the two men relating to the rental of this equipment, the court finds and concludes that Altman is entitled to a reasonable reimbursement therefor.

As to plaintiff's right to recover in *quantum meruit* for the value of its equipment rental furnished to the job, this proposition has recently been sustained by the Fourth Circuit in a Miller Act case arising in this district. In United States for Use of Coastal Steel Erectors, Inc. v. Algernon Blair, Inc., 479 F.2d 638 (4th Cir. 1973), Coastal was a subcontractor to Blair for the performance of steel erection in the construction of a naval hospital. Coastal commenced performance, supplying its own cranes for handling and placing steel. Blair refused to pay for crane rentals, maintaining that it was not obligated to do so under the subcontract. Because of Blair's failure to make payments for crane rental, Coastal terminated its performance of the subcontract. The district court found that Blair's refusal to pay for crane use was a material breach justifying Coastal's terminating performance. However, the district court, under these facts, refused to award Coastal damages on the basis of *quantum meruit*. The Fourth Circuit reversed, aligning itself with those jurisdictions upholding the right of a plaintiff to seek recovery under *quantum meruit* in a Miller Act case. The court's holding is equally applicable here:

> "In the present case, Coastal has, at it own expense, provided Blair with labor and the use of equipment. Blair, who breached the subcontract, has retained these benefits without having fully paid for them. On these facts, Coastal is entitled to restitution in *quantum meruit*." 479 F.2d at 641.

The measure of recovery for *quantum meruit* is the reasonable value of the performance. United States for Use of Coastal Steel Erectors, Inc. v. Al-

Castro, 71 F.Supp. 36 (D.P.R.1947), where the courts found oral contracts between prime contractors and their subcontractors for the payment of equipment rentals.

gernon Blair, Inc., *supra.* On the invoices, Altman charged Young Lumber with Eight Hundred ($800.00) Dollars per month rental for the bulldozer, and Four Hundred ($400.00) Dollars per month rental for the tractor and attachments. Altman testified that the rental value of the dozer was actually about Sixteen Hundred ($1600.00) Dollars per month, but that since this arrangement was "a little different" he was only seeking to recover half that amount. He explained that he based the tractor rental value on the basis of Two and $50/100 ($2.50) Dollars per hour, that it was used "all day every day" while it was on the job, for a weekly rental rate of One Hundred ($100.00) Dollars.

As to reasonable rental value, plaintiff called Doyle Kilpatrick, presently a heavy equipment instructor at Beaufort Technical School and an employee of Young Lumber during this subcontract. He testified that Eight Hundred ($800.-00) Dollars per month rental for the dozer was reasonable. Harry Hinkle, another former Young Lumber employee who is now in the business of renting his own equipment, agreed that Eight Hundred ($800.00) Dollars per month was a reasonable fee for the dozer, and stated that One Hundred ($100.00) Dollars per week was a reasonable rental for the tractor and attachments (disc and scraper).

■ Although plaintiff has thus established that the periodic rates he seeks to charge for equipment rental are reasonable, he has not so clearly established the period of time the equipment was actually used on the job. While it is not seriously contested that the bulldozer was on the site during the entire period of the performance of the subcontract, it is disputed as to how much the machine was used and how much it sat idle. Ruscon's superintendent Wooten testified

that the dozer was not used for "months at the time." [6] Conversely, while the testimony is generally in accord that the tractor was in fairly constant use while on the job site, Altman admits that it was not always kept on the job. His invoice (Plaintiff's Exhibit 2) for tractor rental asserts that this implement was used from May 1971 to November 1971, then from March 1972 through August 1972, a total of twelve months. Altman produced no independent, contemporary records to support the periods set forth in the invoice. He admitted in direct examination that he was uncertain as to the date the tractor was brought on the job in 1971.

■■ Defendants correctly assert in their memorandum that the burden is upon the plaintiff to establish the amount of its damages, and that while such proof is not required to be to the point of mathematical certainty, it should be sufficient for the court to determine damages with reasonable certainty and accuracy, without resort to conjecture, guess or speculation. Here the plaintiff has proved that both pieces of machinery were on the job for some period of time, and that both were used toward the completion of the project. Although on the proof marshalled the court cannot justifiably award the plaintiff the total amount of the claim presented, the court is satisfied that plaintiff is entitled to compensation in *quantum meruit* for some reasonable period which the evidence suggests the equipment was being used. Accordingly, the court finds and concludes that plaintiff is entitled to rental for the dozer for eight months, rather than the nineteen months claimed, and to rental for the tractor and attachments for seven months, rather than the twelve months claimed.

■ Sufficient evidence was not adduced at trial to enable the court to de-

**6.** Altman's explanation for this circumstance was that the dozer was a large piece of equipment and thus too expensive to move on and off site according to need; thus it was kept at the site throughout perform-

ance. In the court's view, this fact does not support the equipment owner's charging rental for time when the machinery was not in use.

termine which of the plaintiffs is entitled to the rents. See footnote 1, *supra*. In view of this confusion, defendants are entitled to protection from the court to assure that only one recovery is had, and that there is no dispute among the plaintiffs as to which is entitled to the judgment. Accordingly, the court will order the appropriate defendant to deposit the amount of the judgment with the clerk of this court. Plaintiffs should file an agreement satisfactory to all defendants stating which of the three plaintiffs will receive the award, and relinquishing all claims by the other plaintiffs to any entitlement to the judgment. Upon filing of such agreement entered into by all parties plaintiff, and subscribed as approved by counsel for all defendants, the clerk shall pay the judgment to the designated plaintiff.