972 F.2d 987
 38 Cont.Cas.Fed. (CCH) P 76,391
 UNITED STATES of America, For the Use and Benefit of Dallas
G. Olson, Appellant,
v.
W.H. CATES CONSTRUCTION CO., INC., a Minnesota corporation;
American Casualty Company of Reading,
Pennsylvania, Appellees.
 Nos. 91-2403.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 10, 1991.
Decided Aug. 17, 1992.
 
 Charles Thomas Nixon, Minneapolis, Minn., argued, for appellant.
 Gary Arthur Van Cleve, Minneapolis, Minn., argued, for appellees.
 Before JOHN R. GIBSON, Circuit Judge, MAGILL, Circuit Judge, and KAUFMAN,* Senior District Judge.
 FRANK A. KAUFMAN, Senior District Judge.
 Dallas G. Olson (Olson) was employed from January, 1987 until November, 1990 as an estimator and project manager by Cates Construction Company (Cates), a general contractor doing business in Minnesota. Between April, 1989 and September, 1990, Olson worked for Cates on two federal construction projects and one state construction project, all three of which involved public improvements. Olson instituted this suit against Cates and its surety, American Casualty Company, under the Miller Act, 40 U.S.C. § 270a, and the Minnesota "little Miller Act," Minn.Stat. § 574.26, seeking damages of $24,000, the amount of Olson's allegedly unpaid salary for the period between April, 1989, and September, 1990. Olson asserts federal jurisdiction in connection with his federal Miller Act claim and pendent jurisdiction with respect to his state statutory claim. Cates moved to dismiss Olson's complaint for lack of subject matter jurisdiction and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (6). Because affidavits were filed in connection with that motion, the district court treated Cate's motion to dismiss as a motion under Federal Rule of Civil Procedure 56 and granted summary judgment in favor of Cates and American Casualty Company on the ground that the labor of a salaried employee like Olson, as opposed to that of an hourly wage worker, is not covered by the Miller Act. Accordingly, the district court held that it lacked jurisdiction to hear Olson's claims. The sole issue presented on appeal is whether the court below was correct in concluding that Olson did not provide labor within the meaning of the Miller Act.
 I.
 The following facts are undisputed. During the relevant time period, Cates employed Olson as a project manager and estimator. Olson spent a large percentage of his time at Cates preparing estimates for project bids, and a small percentage of his time acting as a project manager on two federal contracts and one state contract. The federal contracts involved public improvements with respect to two federal buildings and were within the purview of the Miller Act. The parties refer to those contracts as the Federal Courthouse contract and the Federal Building contract. Cates, as general contractor, provided payment bonds for each of those two projects for the protection of all persons covered by the Miller Act, as required by law. American Casualty was the surety for each of those bonds. Olson contends that the federal Miller Act covers his work on the two federal projects; he does not claim that the work he performed concerning Cates' state contract, which the parties refer to as the University of Minnesota Project, is covered by the federal Miller Act.
 Olson's work on the Federal Courthouse contract included work at and away from the job site to correct problems with the automatic doors and the security system. With regard to that contract, Olson supervised "punch list" completion, dealt with subcontractors and government representatives, and performed some manual on-site work such as caulking, rehanging magnetic switches and cleaning. As to the Federal Building contract, Olson also worked on and off the job site. With respect to that contract, Olson's tasks included managing Cates' employees and subcontractors, and performing some physical jobsite labor such as sanding, patching and removing light fixture brackets. When Olson began working on those federal projects, each of them was nearing completion.
 Olson claims that he was paid only half of his salary owing for the period between April, 1989 and October, 1990, and that the remainder of his salary was deferred due to cash flow difficulties on Cates' part, with the understanding that such remainder would eventually be paid by Cates to Olson. Cates disagrees, contending that as a result of a decline in its business, it promised to pay Olson the remainder of Olson's salary only if the company showed a profit, which it did not, and that, in effect, Olson agreed to accept a salary cut in lieu of being laid off. These disagreements are not litigated in this appeal. Rather only federal Miller Act coverage is at issue herein.
 II.
 The purpose of the Miller Act, 40 U.S.C. § 270a, is to provide security for payment of those who supply work or materials for the prosecution of federal projects to which state law lien rights do not attach.
 Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law. But a lien cannot attach to Government property, ... so suppliers on government projects are deprived of their usual security interest. The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers.
 F.D. Rich Co., Inc. v. United States for the Use of Industrial Lumber Co., Inc., 417 U.S. 116, 122, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703 (1974) (citations omitted). The Miller Act requires the general contractor to procure a bond to protect the payment of those persons who supply labor or materials to the general contractor on a federal project.[1] In the event of the contractor's nonpayment for such work or materials, "[e]very person who has furnished labor or material in the prosecution of the work provided for in such [a federal] contract, ... shall have the right to sue on such payment bond" in federal district court. 40 U.S.C. § 270b(a), (b) (1959).[2] Federal law not state law, governs the scope of the remedy afforded by the Miller Act.[3] See F.D. Rich Co., Inc., 417 U.S. at 126-27, 94 S.Ct. at 2163-64; U.S. v. Butt & Head, Inc., 535 F.Supp. 1155, 1158 n. 2 (S.D.Ohio 1982). Cf. United States v. U.S. Fidelity and Guaranty Co., 656 F.2d 993, 996 (5th Cir.1981). But see U.S. v. Kiewit & Sons' Co., 235 F.Supp. 500, 502 (D.Ala.1964).
 The Miller Act "is highly remedial in nature.... and is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." MacEvoy Co. v. United States, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944) (citations omitted). See also F.D. Rich Co., 417 U.S. at 124, 94 S.Ct. at 2162-63; United States v. Aetna Casualty & Surety Co., 480 F.2d 1095, 1100 (8th Cir.1973). However, only certain professional supervisory work is covered by the Miller Act, namely, "skilled professional work which involves actual superintending, supervision, or inspection at the job site." Butt & Head, Inc., 535 F.Supp. at 1160. Accordingly, "[p]laintiff can only recover on the payment bond ... to the extent that [he] performed on-site services." Id.
 "It may be true that the term 'labor' in this statute, as generally in statutes relating to mechanics' liens, refers to physical labor rather than technical and professional skill and judgment, but an architect or other skilled man who actually superintends the work as it is done is by the weight of authority furnishing labor.... It was so held under the federal statute where the superintendent did some manual labor in Bankers' Surety Co. v. Maxwell (C.C.A.) 222 F. 797...."
 United States v. Shea-Adamson Co., 21 F.Supp. 831, 837 (D.Minn.1937) (quoting American Surety Co. of New York v. United States, 76 F.2d 67, 68 (5th Cir.1935) (citations omitted)).[4] See also Nat'l. State Bank of Newark v. Terminal Construction Corp., 217 F.Supp. 341, 360-61 (D.N.J.1963), aff'd, 328 F.2d 315 (3d Cir.1964) (per curiam); Bankers' Surety Co. v. Maxwell, 222 F. 797, 799-800 (4th Cir.1915). Thus, the on-site supervisory work of a project manager falls within the purview of the Miller Act if such a superintendent did some physical labor at the job site or might have been called upon to do some on-site manual work in the regular course of his job. See American Surety Co. of New York, 76 F.2d at 68. Herein, in order to bring himself within the Miller Act, Olson must show that his work was "performed ... in connection with the completion of the project and not for the purpose of correcting defects." United States v. Western Electric Co., Inc., 337 F.2d 568, 572-73 n. 12 (9th Cir.1964) (concluding that there were genuine issues of fact, inter alia, as to whether punch list items were necessary for the completion of the original contract or constituted repair work). See also United States v. Gunnar I. Johnson & Son, Inc., 310 F.2d 899, 903 (8th Cir.1962); United States v. Young Lumber Co., 376 F.Supp. 1290, 1295 (D.S.C.1974). Whether "the work performed or material furnished was minor in nature is not conclusive." Western Electric Co., Inc., 337 F.2d at 573 n. 12.
 Defendants agree that Olson, in carrying out his duties as project manager on the Federal Courthouse contract and the Federal Building contract, did perform some on-site supervisory work and manual labor. Under the weight of authority, Olson may recover under the Miller Act for any due and unpaid salary which constitutes payment for the amount of on-site supervisory work, no matter how small, which Olson performed in the prosecution of the Federal Courthouse contract and/or the Federal Building contract and which was not done in connection with subsequent repair of that original contract work.[5] Whether Olson was or was not a salaried worker as opposed to a hourly wage-earner is not controlling.
 III.
 Appellants also maintain that Olson, having agreed to forgo the remainder of his salary if Cates did not make a profit, was in effect one of the prime contractors on the projects at issue and, therefore, cannot seek Miller Act protection. That contention is unsound. First of all, the record before this Court presents a disputed factual issue, which cannot be resolved on summary judgment, as to whether or not Olson agreed to waive part of his salary if Cates did not make a profit. Secondly, the present record contains no factual support for the claim that Olson was a joint venturer or partner with Cates or had any relationship with Cates other than as an employee. See Delgado v. Lohmar, 289 N.W.2d 479, 482, n. 2 (Minn.1979); Bankers' Surety Co., 222 F. at 800-01; United States v. Young Lumber Co., 376 F.Supp. 1290, 1296-97 (D.S.C.1974). Certainly, Olson was not required to fulfill the bonding requirements of the Miller Act as Cates was obligated to do as prime contractor. However, on remand, the district court should give appellees further opportunity to sustain their contention that Olson was, in essence, a co-prime contractor and not an employee entitled to Miller Act judgment and protection.
 IV.
 In addition, appellees take the position that the absence of Olson's job title, project manager, from the Davis-Bacon Act job classifications requires the conclusion that Olson was not a laborer entitled to Miller Act protection. The Davis-Bacon Act, 40 U.S.C. § 276a (1964), does not seek by its own terms to limit expressly or implicitly the scope of the term "labor" under the Miller Act, nor have appellees provided any statutory or case law authority to indicate that the Davis-Bacon Act should be so construed. In essence, the Davis-Bacon Act provides that for contracts with the United States in excess of $2,000 for the "construction, alteration, and/or repair ... of public buildings ... of the United States or the District of Columbia," any mechanics or laborers involved in such work must be paid minimum wage "determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work ..." 40 U.S.C. § 276a(a). Thus, the Davis-Bacon and Miller Acts have different and independent aims, and do not, either explicitly or implicitly, limit one another.
 V.
 In sum, Olson's uncontested sworn statements that he performed some on-site supervisory work in the prosecution and completion of two federal construction contracts constitute sufficient evidence that he performed Miller Act type of work so as to enable him to survive summary judgment. On remand, Olson will, inter alia, have the burden of proving by a preponderance of the evidence, how much, if any, on-site supervisory work he performed on the two federal projects. The district court should further, on remand, consider under the principles enunciated in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and its progeny, whether the bases for appellant's federal and state law claims share a common nucleus of fact, and if so, whether or not the district court should exercise pendent jurisdiction over appellant's state law claim.
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation
 
 
 [1]
 The Miller Act in pertinent part provides:
 Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor":
 ....
 (2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person....
 40 U.S.C. § 270a(a)(2) (1978).
 
 
 [2]
 Section 270b of the Miller Act states in pertinent part:
 (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under Sections 270a to 270d of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: ....
 (b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him....
 40 U.S.C. § 270b(a), (b) (1959).
 
 
 [3]
 Minnesota appears to allow a supervisor or other similar professional to obtain a lien for his or her services. See Korsunsky Krank Erickson Architects, Inc. v. Walsh, 370 N.W.2d 29, 31 (Minn.1985) (architectural services are lienable); Lamoreaux v. Andersch, 128 Minn. 261, 150 N.W. 908, 909 (1915) (architectural services are lienable); Lindquist v. Young, 119 Minn. 219, 138 N.W. 28, 29 (1912) (supervision is lienable). Accordingly, whether federal law or state law applies in this case would not appear to make much difference
 
 
 [4]
 Shea-Adamson Co., 21 F.Supp. 831, involved interpretation of the scope of the protection afforded by the predecessor of the Miller Act, the Heard Act of Aug. 13, 1894, ch. 280, 28 Stat. 278, as amended, Act of Feb. 24, 1905, 33 Stat. 811. The courts, however, have not distinguished between the Miller Act and the Heard Act with regard to the meaning of term "labor" as it relates to this case. MacEvoy Co., 322 U.S. at 105-06, 107, 64 S.Ct. at 892-93, 893-94
 
 
 [5]
 Because Cates admits that Olson was employed by and performed work for Cates, and that Cates paid Olson at least in part for that work, Olson has offered sufficient evidence of the existence of a contract to survive a motion for summary judgment