UNITED STATES of America, for the Use and Benefit of Ronald R. BRADBURY, Plaintiff,

v.

TLT CONSTRUCTION CORP., Reliance Insurance Company, and Richard Hudson, d.b.a. RHL Flooring, Defendants.

No. CIV.A. 00–025 L.

United States District Court, D. Rhode Island.

March 30, 2001.

Charles S. Kirwan, Pawtucket, RI, for Plaintiff.

Carrie L. Dussault, Morrison, Mahoney & Miller, Providence, RI, for Defendants.

## OPINION AND ORDER

LAGUEUX, District Judge.

In this case, Ronald R. Bradbury ("plaintiff") brings suit under the Miller Act, 40 U.S.C. §§ 270a–270d (1994), and state contract law to recover $21,680 in unpaid wages he claims are due because of his employment on a federal construction project in Middletown, Rhode Island ("the Project"). The United States Navy hired defendant TLT Construction Corp. ("TLT") as the primary contractor on the Project. Defendant Reliance Insurance Company ("Reliance") was the surety on the Project's required Miller Act bond. TLT and Reliance (collectively "defendants") move this Court to dismiss plaintiff's action for "failure to state a claim upon which relief can be granted" pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons discussed below, defendants' motion to dismiss is denied.

### Background

In June 1998, plaintiff began working for defendant Richard Hudson, d.b.a. RLH Flooring ("Hudson"),[1] a subcontractor on the Project. Plaintiff asserts that Hudson contracted with him to sand and tape on the Project at a rate of $12.00 per hour. According to plaintiff, the Secretary of the Department of Labor set a minimum Davis–Bacon Act wage of $28.50 per hour for the type of work plaintiff performed on the Project.

In September 1998, while still employed by Hudson, plaintiff received a $1.00 per hour raise, bringing his wage to $13.00 per hour, still below the $28.50 per hour wage plaintiff claims Hudson was required to pay him under the Davis–Bacon Act. During the first week in February 1999, TLT removed Hudson from the Project. According to plaintiff, from that time through the end of April, TLT retained plaintiff's services and paid him $28.50 per hour for the same type of work he had performed previously on the Project. Plaintiff has brought suit on the Miller Act payment bond, seeking to recover $21,680 which he claims he is owed in unpaid Davis–Bacon wages for the period of time he worked on the Project and was paid less than $28.50 per hour.

### Standard for Motion to Dismiss Under Fed.R.Civ.P. 12(b)(6)

In ruling on a motion to dismiss, the court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. *See Figueroa v. Rivera,* 147 F.3d 77, 80 (1st Cir.1998). A case should be dismissed under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### Jurisdiction

The matter is properly before the Court pursuant to 28 U.S.C. § 1331 and 40 U.S.C. § 270b(b).

### Discussion

Plaintiff has brought suit for unpaid wages against defendants' Miller Act payment bond. The Miller Act requires that before a contractor may be awarded a federal construction contract, the contrac-

---

1. Hudson has not joined in this motion.

tor must post a payment bond "for the protection of all persons supplying labor and material in the prosecution" of the construction project. 40 U.S.C. § 270a(a)(2). The Miller Act further provides that "[e]very person who has furnished labor or material" for a federal construction project subject to the Miller Act's payment bond requirement "shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him." *Id.* § 270b(a). Moreover, the Miller Act expressly provides that laborers who were hired by subcontractors may sue the primary contractor if they provide the primary contractor with sufficient notice as prescribed by statute. *Id.* In this case, plaintiff asserts that his Miller Act claim is appropriate because he provided labor on a federal construction project subject to the Miller Act's payment bond requirement and is owed unpaid wages.

Defendants argue that plaintiff's action should be dismissed. Defendants contend that plaintiff's action is more properly classified as a claim for unpaid wages under the Davis–Bacon Act and that plaintiff has failed to comply with the Davis–Bacon Act's procedural requirements for bringing a claim for unpaid wages. At this point in the litigation, defendants have not challenged the substantive elements of plaintiff's Miller Act claim, namely that: (1) plaintiff performed labor on the Project; (2) plaintiff is owed money in connection with his work on the Project; and (3) defendants posted a Miller Act payment bond in connection with the Project. Defendants agree that the Miller Act permits a laborer to bring suit against the payment bond "for the amount, or the balance thereof" that he is owed on his contract. 40 U.S.C. § 270b(a). However, defendants

contend that this language allows a plaintiff to sue only for an established sum that he is owed. Defendants argue that plaintiff cannot sue under the Miller Act for the "amount" he is owed until he has received an administrative determination that he is owed unpaid Davis–Bacon Act wages and that insufficient funds have been withheld to compensate him. 40 U.S.C. § 276a–2(b)(1994). Defendants assert that plaintiff's Miller Act claim is an attempt to circumvent the extensive administrative process that accompanies the Davis–Bacon Act and, as such, this action should be dismissed.

Plaintiff strenuously challenges the notion that his Miller Act claim is in any way limited by the procedures prescribed in the Davis–Bacon Act. But, plaintiff acknowledges that "the applicable Davis–Bacon Act wage determination supplies the wage rate by which [p]laintiff shall prove the calculation of his bond claim for underpaid wages." Pl.'s Mem. in Supp. of his Objection to Defs.' Mot. to Dismiss at 9. Plaintiff argues that his reliance on the wage rates imposed by the Davis–Bacon wage determination does not affect his Miller Act claim. Plaintiff cites the Eighth Circuit's decision in *United States ex rel. Olson v. W.H. Cates Constr. Co.,* 972 F.2d 987 (8th Cir.1992) to support the proposition that his Miller Act claim is completely separate from the Davis–Bacon Act and the procedures therein. Specifically, plaintiff points to that Court's conclusion that "the Davis–Bacon and Miller Acts have different and independent aims, and do not, either explicitly or implicitly, limit one another." *Id.* at 992. But that language, when examined in the context in which it is used, has no bearing on this case. The issue in the *Olson* case was whether an employee could "furnish[ ] labor" under the Miller Act if his job title was not listed on the construction project's

list of Davis–Bacon Act's job classifications. *Id.* at 991. Unlike the case at bar, the appellant in *Olson* did not rely on the Davis–Bacon Act to establish his Miller Act claim. Here, plaintiff's case turns on whether a Davis–Bacon Act violation occurred. Therefore, plaintiff's claim is properly classified as a Miller Act claim brought to recover unpaid Davis–Bacon Act wages. Accordingly, an examination of the Davis–Bacon Act and its requirements is necessary.

Any contract subject to the Davis–Bacon Act requires the contractor or subcontractor to pay any mechanics or laborers employed at the work site a wage that is no less than the minimum prescribed by the Secretary of Labor. 40 U.S.C. § 276a. *See also Universities Research Ass'n v. Coutu,* 450 U.S. 754, 756, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981). The Davis–Bacon Act requires that these wage specifications apply to any contract for the construction or repair of any public building or public work for the United States to which the United States is a party. 40 U.S.C. § 276(a). Pursuant to 40 U.S.C. § 276(c), the Secretary of Labor has promulgated extensive regulations regarding the Davis–Bacon Act and its enforcement. *See generally* 29 C.F.R. §§ 1, 3, 5, 6, and 7. These regulations are referenced in all government contracts subject to the Davis–Bacon Act. *Id.* § 5.5.

■ Defendants argue with force that plaintiff's claim should be dismissed because no private right of action exists under § 1 of the Davis–Bacon Act. Plaintiff contests this point only half-heartedly, choosing instead to argue that his Miller Act claim is entirely separate from the Davis–Bacon Act and that defendants' arguments regarding § 1 are not relevant to this case. Although the issue has not been argued extensively by plaintiff, it does merit some discussion. If defendants are wrong and § 1 provides a private cause of action then their motion to dismiss would fail on that ground. However, to the extent necessary, this Court agrees with defendants and concludes that no private right of action exists under § 1 of the Davis–Bacon Act.

The majority of courts that have addressed the issue have agreed with this conclusion. The leading decision in this area is the Fifth Circuit's opinion in *United States ex rel. Glynn v. Capeletti Bros., Inc.,* 621 F.2d 1309 (5th Cir.1980), which several other courts have followed, including: *Peatross v. Global Assocs.,* 849 F.Supp. 746, 749 (D.Haw.1994); and *Weber v. Heat Control Co.,* 579 F.Supp. 346, 348 (D.N.J.1982) aff'd. 728 F.2d 599 (3rd Cir. 1984). *Accord Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co.,* 135 F.3d 671, 676 (9th Cir.1998). *But see McDaniel v. Univ. of Chicago,* 548 F.2d 689, 692–95 (7th Cir.1977)(holding that § 1 of the Davis–Bacon Act contains an implied private right of action); *Norling v. Valley Contracting & Pre–Mix,* 773 F.Supp. 186, 189 (D.N.D.1991)(following *McDaniel* and implying a private right of action under the Davis–Bacon Act when the explicit remedies provided for in that Act are unavailable). In *Capeletti,* the Fifth Circuit applied the four factor test set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) for determining whether a private remedy is implied in a statute. *Capeletti,* 621 F.2d at 1313–17. After a detailed analysis, which need not be repeated here, the *Capeletti* Court concluded that no implied private right of action exists under the Davis–Bacon Act. *Id.* This Court adopts the reasoning in *Capeletti* and concludes that plaintiff has no private right of action under § 1 of the Davis–Bacon Act.

■ The question then is how can plaintiff bring an action against defendants'

Miller Act bond for unpaid Davis–Bacon Act wages? The United States Supreme Court has articulated the process through which a Davis–Bacon Act violation may be remedied. The Court wrote that if a contractor or subcontractor fails to comply with the Davis–Bacon Act's wage requirements:

> the Government contracting officer may withhold so much of the accrued payments as may be considered necessary to pay the laborers and mechanics the difference between the contract wages and those actually paid. Section 3 of the [Davis–Bacon] Act ... authorizes the Comptroller General to pay these accrued payments directly to the laborers and mechanics.

> Should the withheld funds prove insufficient to reimburse the employees, § 3 confers on them "the right of action and/or [of] intervention against the contractor and his sureties conferred by law upon persons furnishing labor or materials." Laborers and mechanics working under a contract that *contains* Davis–Bacon Act stipulations thus may themselves bring suit against the contractor on the payment bond that the Miller Act ... requires for the protection of persons supplying labor or materials under certain federal construction contracts.

*Universities Research,* 450 U.S. at 757–58, 101 S.Ct. 1451 (quoting 40 U.S.C. § 276a–2(b)) (citations omitted). Therefore, § 3 of the Davis–Bacon Act allows a laborer to bring a Miller Act claim for unpaid Davis–Bacon Act wages after there has been an administrative determination that the wages are owed to the laborer and that the Comptroller General has withheld insufficient funds to satisfy the claim. *Capeletti,* 621 F.2d at 1315. This conclusion is supported by the statute's plain language, the relevant legislative history, and the relevant federal regulations.

The plain language of the Davis–Bacon Act clearly contemplates that suits pursuant to § 3 may be brought after an administrative determination that such money is owed. The statute states that "[t]he Comptroller General of the United States is authorized and directed to pay directly to laborers and mechanics from any accrued payments withheld under the terms of the contract any wages found to be due laborers and mechanics" under the Davis–Bacon Act. 40 U.S.C. § 276a–2(a). This language contemplates an administrative determination as to what wages, if any, are actually due. If wages are due, the process can be administratively resolved through the withholding of funds. Next, the statute provides that "[i]f the accrued payments withheld under the terms of the contract ... are insufficient to reimburse" the affected laborers and mechanics, those "laborers and mechanics shall have the right of action and/or of intervention against the contractor and his sureties conferred by law upon persons furnishing labor or materials." *Id.* § 276a–2(b). This private right of action is designed to ensure that the unpaid laborer is able to recover what is due him. But, this purely financial remedy is available only after there has been an administrative determination that some money is owed and that insufficient funds have been withheld to compensate the affected laborer.

In addition, the right of action against the Miller Act bond is only one part of a broad regulatory scheme to enforce the Davis–Bacon Act. *Capeletti,* 621 F.2d at 1315. The Davis–Bacon Act prescribes other administrative actions that may be taken against contractors and subcontractors who fail to pay their employees the appropriate wages. For example, the government may terminate the contract if a contractor is found to have violated the prevailing wage provisions. 40 U.S.C.

§ 276a–1. In addition, the Comptroller General "is directed to distribute a list to all departments of the Government giving the names of persons or firms whom he has found to have disregarded their obligations to employees and subcontractors[;]" and those persons or firms named on the list may not be awarded a government contract for three years. *Id.* § 276a–2(a). These enforcement measures demonstrate that the right of an aggrieved laborer to bring suit against a contractor's Miller Act bond for unpaid Davis–Bacon Act wages is not just an end in itself but an integral part of the broader Davis–Bacon Act enforcement scheme. Therefore, to prevail in such an action, plaintiff must receive an administrative determination that he is owed unpaid Davis–Bacon Act wages; to hold otherwise could disrupt Congress's carefully crafted administrative scheme.

An examination of the relevant legislative history also leads to the conclusion that an administrative determination as to how much is owed under the Davis–Bacon Act is a prerequisite before a laborer can bring a Miller Act claim for unpaid wages pursuant to § 3 of the Davis–Bacon Act. In 1935, four years after Congress enacted the Davis–Bacon Act, Congress amended the statute because "unscrupulous contractors" had been "tak[ing] advantage of the wide-spread unemployment among the buildings crafts to exploit labor and to deprive employees of the wages to which they were entitled under the law." H.R.Rep. No. 74–1756 at 1 (1935); S.Rep. No. 74–1155 at 1 (1935). Through the 1935 amendments, Congress sought to provide remedies to laborers who had not been paid the prevailing wage. Toward that end, it expressly provided that the contracting officer could withhold payments to contractors found to have violat-

ed the prevailing wage provision of the Davis–Bacon Act and the Comptroller General could use those withheld payments to reimburse the aggrieved laborers and mechanics. H.R.Rep. No. 74–1756 at 3; S.Rep. No. 74–1155 at 3.

In addition, the 1935 amendments supplied a second remedy to protect laborers from "unscrupulous contractors." Referring to section 3(b) the House and Senate Committee reports state:

> [w]hen the funds withheld for such claimants are insufficient to reimburse all laborers and mechanics aggrieved by breach of the wage stipulations this subsection gives such laborers and mechanics a cause of action on the contractor's bond, pursuant to the provisions of the Hurd [Heard] Act[2].... Because of such familiar doctrines of contract law as waiver and release, it is dubious whether the courts at present would recognize such a cause of action.

H.R.Rep. No. 74–1756 at 4 (alteration in original) (citations omitted); S.Rep. No. 74–1155 at 4 (alteration in original) (citations omitted). The use of the word "when" indicates that Congress intended that a laborer could bring an action against a Miller Act bond for unpaid Davis–Bacon Act wages only after an administrative determination that wages were owed and that insufficient funds had been withheld. In providing for an action against the Miller Act bond, Congress sought to ensure that unpaid laborers and mechanics would be able to recover the money they were owed. This provision did not make the judiciary the arbiter of Davis–Bacon Act disputes. Instead, it ensured that the courts would allow a laborer to recover against the Miller Act bond after that laborer had received an administrative de-

---

**2.** The Miller Act replaced the Heard Act on August 24, 1935.

termination that he was owed money and that none was available.

Moreover, the timing of the passage of the amendments supports this conclusion. The Miller Act was passed merely six days before the 1935 amendments to the Davis–Bacon Act were passed. If Congress intended that laborers could bring direct actions against the Miller Act bond for unpaid Davis–Bacon wages, there would have been no reason to enact § 3(b) of the Davis–Bacon Act.[3] No one would choose to go through the time consuming administrative process to recover unpaid Davis–Bacon Act wages if they could bring a direct action on the Miller Act bond in the first instance. Therefore, it is clear that Congress consciously decided that a laborer cannot bring an action against a contractor's Miller Act bond for unpaid Davis–Bacon Act wages until after he has received an administrative determination that he is owed unpaid wages and that insufficient funds have been withheld to compensate him.

Finally, the extensive administrative scheme that has been established to monitor and enforce compliance with the Davis–Bacon Act wage provisions also supports the conclusion that the Davis–Bacon Act requires an administrative determination as to what amount is owed before a plaintiff can prevail on a Miller Act claim for unpaid Davis–Bacon Act wages. *See generally* 29 C.F.R. §§ 5.1–5.13. Specifically, under 29 C.F.R. § 5.6, entitled "Enforcement," the regulations provide:

[t]he Federal agency shall cause such investigations to be made as may be necessary to assure compliance with the labor standards. . . . Investigations shall be made of all contracts with such frequency as may be necessary to assure compliance. Such investigations shall include interviews with employees . . . and examinations of payroll data. . . . Complaints of alleged violations shall be given priority.

*Id.* This regulatory scheme contemplates that when laborers report Davis–Bacon Act wage violations to either the contracting agency or the Department of Labor, an administrative investigation of those claims is made, and if such claims are found valid, more extensive procedures are required to determine what is owed and to whom.

In addition, under 29 C.F.R. § 5.5(a)(9) each contract subject to the Davis–Bacon Act includes the provision that:

[d]isputes arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 C.F.R. parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

*Id.* The term "labor standards" is defined to include "the requirements of the Davis–Bacon Act." *Id.* § 5.2(f). Similarly, 29

---

**3.** In contrast, the Miller Act still affords a direct remedy to individuals who have "furnished labor" on a federal construction project, just not to those who rely on the Davis–Bacon Act to establish their claim. 40 U.S.C. § 270b(a). The wages set under the Davis–Bacon Act are minimum wages only. Contractors and subcontractors are free to contract with employees at wages higher than those required minimums. If a contractor does contract to pay a laborer at a higher wage than that prescribed under the Davis–Bacon Act and then fails to pay the laborer the agreed upon wage, that laborer may bring an action directly under the Miller Act, assuming the other requirements are met, because that laborer is not relying on the Davis–Bacon Act to establish the amount he is owed.

C.F.R. § 5.11, entitled "Disputes concerning payment of wages," promulgates the procedure for resolving "disputes of fact or law concerning payment of prevailing wage rates, overtime pay, or proper classifications." *Id.* § 5.11(a). The section also provides that the dispute resolution procedure "may be initiated upon the Administrator's own motion, upon referral of the dispute by a Federal agency pursuant to § 5.5(a)(9), or upon request of the contractor or subcontractor(s)." *Id.* § 5.11(a). Although §§ 5.5(a)(9) and 5.11(a) do not specifically reference disputes involving laborers, they indicate that disputes evolving from the Davis–Bacon Act will be resolved through the Department of Labor's procedures and not in federal court. Therefore, these sections are consistent with the conclusion that aggrieved laborers must obtain an administrative determination that they are owed unpaid Davis–Bacon Act wages before they can bring suit on the Miller Act bond.

The reasons for this process are obvious. Because the Department of Labor establishes the prevailing wages and worker classifications under the Davis–Bacon Act, the Department of Labor has particular expertise regarding such matters. *United States ex rel. Windsor v. DynCorp, Inc.,* 895 F.Supp. 844, 851–52 (E.D.Va.1995). The extensive administrative process for resolving Davis–Bacon Act disputes relies on this expertise. *See id.* at 852. The weight given to the Secretary's expertise is underscored by the fact that the correctness of the Secretary's determination of minimum wages for each classification on a Davis–Bacon project "is not open to attack on judicial review." *United States v. Binghamton Const. Co.,* 347 U.S. 171, 177, 74 S.Ct. 438, 98 L.Ed. 594 (1954). Therefore, it follows that the Department of Labor, and not the judiciary, should determine what amount is owed any particular laborer because any dispute as to what is owed will likely hinge on the classification of that worker.

Moreover, the administrative process is an appropriate vehicle to address these violations because it is likely that any contractor or subcontractor who violates the Davis–Bacon Act will do so for an entire class of workers and not just a single laborer. In addition, as noted above, Congress has provided additional steps that the contracting agency, the Department of Labor, and the Comptroller General may take to discipline those contractors who fail to comply with the Davis–Bacon Act. 40 U.S.C. § 276a–1; *id.* § 276a–2(a) (b). Apparently, Congress has concluded that the administrative process will regulate compliance with the statute more efficiently than the courts could through piecemeal litigation. Accordingly, anyone bringing suit for unpaid Davis–Bacon Act wages must obtain an administrative determination that such wages are owed and that there are insufficient funds available for payment before he can prevail at trial under the Miller Act.

With these requirements in mind, the Court now turns to plaintiff's Miller Act claim. Although plaintiff's claim depends on the Davis–Bacon Act and plaintiff has not yet begun the administrative process to obtain unpaid wages under the Davis–Bacon Act, he has pleaded sufficient facts to sustain a Miller Act claim and avoid defendants' 12(b)(6) motion to dismiss. *United States ex rel. Motta v. Able Bituminous Contractors Inc.,* 640 F.Supp. 69, 72 (D.Ma.1986). In his complaint, plaintiff asserts that: (1) he furnished labor on a federal construction project; (2) he is owed money in connection with his work on that project; and (3) defendants posted a Miller Act payment bond in connection with that project. At this time, it is plausible that plaintiff could prove some

set of facts that will allow him to prevail on his Miller Act claim. However, plaintiff should note that he will bear the burden of proving damages at trial. Moreover, if his allegation that he was not paid in accordance with the Davis–Bacon Act is his sole means for proving damages, then plaintiff will need to obtain an administrative determination of the amount owed him in unpaid wages because, as discussed above, this Court does not have jurisdiction to determine whether plaintiff is owed any money under the Davis–Bacon Act. Therefore, plaintiff should request a stay of this action until he can secure an administrative determination of what, if anything, he is owed under the Davis–Bacon Act. Because the administrative determination of plaintiff's rights under the Davis–Bacon Act could exceed the Miller Act's one year statute of limitations, 40 U.S.C. § 270b(b), it is entirely appropriate for plaintiff to file his Miller Act claim prior to the conclusion, or even the beginning, of the administrative process. A timely filing enables plaintiff to preserve his rights under the Miller Act should it be administratively determined that he is indeed entitled to recover under the Davis–Bacon Act and the Comptroller General has withheld insufficient funds to compensate him.

## Conclusion

This Court denies defendants' motion to dismiss because plaintiff has stated a cause of action under the Miller Act. But before plaintiff can recover he must secure an administrative determination under the Davis–Bacon Act.

It is so ordered.