**UNITED STATES of America for Use of JOHN D. AHERN COMPANY, INC., Plaintiff-Appellant,**

v.

**J. F. WHITE CONTRACTING COMPANY, The Travelers Indemnity Company, J. L. Caputo Construction Company, Inc., Joseph Caputo and Builders Iron Works, Inc., Joint Venturers, Defendants-Appellees.**

No. 80–1384.

United States Court of Appeals, First Circuit.

Argued Sept. 11, 1980.

Decided May 15, 1981.

Peter J. Gagne, Boston, Mass., with whom Corwin & Corwin, Boston, Mass., was on brief, for plaintiff-appellant.

Kieran B. Meagher, Boston, Mass., with whom Robert D. City and Robert J. Owens Associates, P.C., Boston, Mass., were on brief, for defendants-appellees.

Before COFFIN and CAMPBELL, Circuit Judges, NELSON,* District Judge.

* Of the District of Massachusetts, sitting by designation.

NELSON, District Judge.

Plaintiff, John D. Ahern Co., Inc. ("Ahern") appeals from a district court order dismissing its complaint for failure to meet the ninety day notice requirement of the Miller Act, 40 U.S.C. § 270b(a) (1970). For the reasons stated below, we affirm the district court opinion.

On February 22, 1974 J. F. White Contracting Company ("White") entered into a contract with the Army Corps of Engineers to build the Charles River Dam in Boston, Massachusetts. White, the principal contractor, subcontracted the furnishing and installation of the lock gates to Joseph Caputo and Builders Iron Works, Inc. ("Caputo") on May 10, 1974. Caputo, in turn, subcontracted the sandblasting and painting of the lock gates to Ahern on November 24, 1975. Pursuant to 40 U.S.C. § 270a, White executed a payment bond with its surety, the Traveler's Indemnity Company ("Travelers"), to protect the investment of those supplying labor and materials in connection with the project.

Ahern commenced its work on June 15, 1976. On November 28, 1976, after having completed between 40% and 60% of its subcontracted work, the plaintiff withdrew its people and equipment from the construction site to await further installation of the lock gates by Caputo. All parties agree that the plaintiff performed no work after November 28, 1976. On February 25, 1977, White and Caputo executed an amendment to their subcontract which served to terminate Caputo's subcontract with the plaintiff. Plaintiff received written notice from Caputo of its termination on March 1, 1977.

Plaintiff notified White of its claim for the fair value of the work it had performed on April 27, 1977. This was within ninety days of the termination of its subcontract with Caputo, but some one hundred fifty days after the suspension of its work. Plaintiff subsequently brought suit against White and Caputo to enforce its claim. The defendants moved to dismiss on the ground that plaintiff had not complied with the

Miller Act's requirement that written notice of a claim be given to the principal contractor within ninety days of the date on which the claimant "performed the last of the labor." 40 U.S.C. § 270b(a) (1970). The district court granted the motion, ruling that plaintiff had "performed the last of the labor" on November 28, 1976. On appeal, plaintiff advances the single argument that the ninety day period did not commence until the date its subcontract was terminated, and, as a result, its complaint was in fact timely filed.

■ The Miller Act, 40 U.S.C. § 270b, provides a federal cause of action for persons supplying labor and materials to recover upon a payment bond secured by the principal contractor of a federal government project. In pertinent part, it reads:

> . . . any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond *upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made*, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

40 U.S.C. § 270b(a) (1970) (emphasis added). The requirement that notice must be given to the principal contractor within the ninety-day period is mandatory and is a strict condition precedent to the existence of any right of action upon the principal contractor's bond. *Fleisher Engineering & Construction Co. v. United States*, 311 U.S. 15, 18–19, 61 S.Ct. 81, 83, 85 L.Ed. 12 (1940). The purpose of the notice requirement is to establish a time after which the principal contractor can pay its subcontractor, certain that it will not be exposed subsequently to the claims of those who have supplied labor and materials to the subcontractor. *Bowden v. United States*, 239 F.2d 572, 577–8

(9th Cir. 1956), *cert. denied sub nom. United States ex rel. Malloy v. Bowden*, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1956).

Plaintiff offers three separate grounds on which to reverse the district court's decision. First, plaintiff argues that it has no control over the suspension of its work in November. In March, when it was notified of the termination of its subcontract, it was still available to furnish labor and materials to White. Since plaintiff's inability to perform was the direct result of a termination initiated by White, plaintiff urges us to consider the last date it was available to provide labor and material as the date it "performed the last of the labor" for the purpose of determining when the ninety-day notice period commenced. Second, plaintiff states that, until the notice of termination of its subcontract, it had assumed that its work would resume. It argues that a notice of claim under its subcontract when it temporarily withdrew its work force would have been premature and ineffective since, until White terminated the subcontract, the subcontract price was not due before completion of the work. Third, plaintiff asserts that, because its claim for the fair value of the work it performed did not come into existence until the termination of the subcontract, it could not have stated its claim "with substantial accuracy," as required by the statute, prior to that date.

■ With respect to the plaintiff's first two arguments, we find the decision in *A. B. Cooley v. Barten & Wood, Inc.*, 249 F.2d 912 (1st Cir. 1956), controlling. Any person having a direct contractual relationship with a subcontractor must file a claim within ninety days of the date on which it *last physically worked or supplied materials*, regardless of the expectations of the parties or the circumstances surrounding the termination of work. In *Cooley*, the plaintiff-supplier was asked, in December of 1954, to stop delivery of materials used in the erection of an airplane hangar for the Air Force until the following spring, "owing to the progress of the work." The plaintiff did not immediately notify the principal con-

tractor of its claim because the subcontractor promised to pay the full amount it owed for all past materials on May 1, 1955. The subcontractor did not fulfill its promise and, instead, filed a petition in bankruptcy. The plaintiff then notified the principal contractor of the subcontractor's default on May 9, 1955, nearly five months after it last supplied materials. The *Cooley* court concluded that the ninety-day notice period began on December 17, 1954, the day plaintiff last supplied material to the subcontractor. The court noted that strict enforcement of the ninety-day notice period was necessary to give effect to "the intent of Congress to fix a time limit after which the prime contractor could make payment to the subcontractor with certainty that he would not thereafter be faced by claims of those who had supplied labor and materials to the subcontractor." *Cooley*, 249 F.2d at 915, *quoting Bowden v. United States*, 239 F.2d 572, 577–8 (9th Cir. 1956), *cert. denied sub nom. United States ex rel. Malloy v. Bowden*, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1956). Thus, despite the fact that Cooley had no control over suspension of its work and that its contract with the subcontractor was still in full force and effect, the court ruled that the ninety-day notice period commenced on the date the plaintiff last supplied materials. For the purpose of determining when the ninety-day notice period commenced, we find the *Cooley* case indistinguishable from the case at bar. The district court was correct in holding that the notice period for plaintiff began on November 28, 1976, the date plaintiff withdrew its people and equipment from the construction site.

■ We also reject plaintiff's argument that it could not state its claim with substantial accuracy until the date Caputo and White terminated its subcontract. Existing case law provides no support for the plaintiff's proposition. To the contrary, it is well-settled that one may recover the reasonable value of labor and materials furnished in Miller Act cases. *Narragansett Improvement Company v. United States*, 290 F.2d 577 (1st Cir. 1961); *United States v. Algernon Blair Incorporated*, 479 F.2d 638 (4th Cir. 1973). Thus, plaintiff could have submitted a claim for the reasonable value of all labor and materials it had provided to the project the instant it withdrew its people from the construction site. Moreover, plaintiff was not required to determine its claim to the point of mathematical certainty. Rather, its claim must have been sufficient to allow the court to determine damages "with reasonable certainty and accuracy, without resort to conjecture, guess or speculation." *United States ex rel. Altman v. Young Lumber Company*, 376 F.Supp. 1290, 1299 (D.S.C.1974). We fail to see the importance of the March 1, 1977 notice of termination in ascertaining the fair value of work which was last performed in November.

Since we have determined that the ninety-day notice period commenced on November 28, 1976, plaintiff's notice to White was not timely and the district court properly allowed defendant's motion to dismiss. We do not find strict enforcement of the ninety-day notice period to be burdensome to those supplying labor and materials. As the *Cooley* court noted:

> . . . A brief letter from the supplier to the prime contractor will make certain and unambiguous the rights and liabilities of all concerned—the supplier, the prime contractor, and the surety. We do not believe that Congress intended to have it held that such little expenditure of effort is too much diligence to require of a supplier in order that he may secure his right of action on the payment bond.

239 F.2d at 915, *quoting Bowden v. United States*, 239 F.2d 572, 577–8 (9th Cir. 1956), *cert. denied sub nom. United States ex rel. Malloy v. Bowden*, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957).

*Affirmed.*