19 F.3d 1431
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, for the use of Barber-Colman
Company, Plaintiff-Appellee,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellee,
v.
Frederick J. FRANK, Third Party Defendant-Appellant,
and
Macco Contracting, Incorporated; Susan T. Frank, Third
Party Defendants.
 No. 93-1665.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 8, 1994.
Decided March 31, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Robert R. Merhige, Jr., Senior District Judge, sitting by designation. (CA-91-1780)
 Frederick J. Frank, appellant Pro Se.
 Robert Francis McMahan, Jr., Columbia, SC, Jackson L. Barwick, Jr., Baker, Barwick, Ravenel & Bender, Columbia, SC, for appellees.
 D.S.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before MURNAGHAN, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This is an appeal from a trial and judgment pursuant to the Miller Act. 40 U.S.C. Secs. 270a-270d (1988). The Miller Act is designed to provide a remedy for unpaid "persons supplying labor and material in the prosecution of the work provided for" on federal projects. The Act supplants state mechanic's lien law in that it provides a remedy for sub-contractors who would ordinarily be able to file a mechanic's lien on property for which they had provided labor and materials. F.D. Rich Co. v. United States ex. rel Industrial Lumber Co., 417 U.S. 116, 122 (1974).
 
 
 2
 Frederick Frank, through his corporation Macco Contracting (Macco), entered into a contract with the United States Government for the construction of a Marine Corps Reserve Center in South Carolina. Macco, pursuant to the terms of the Miller Act, posted a payment bond issued by United States Fidelity & Guaranty Company (USF & G). The bond contained a broad indemnity agreement by which Macco and Frank agreed to indemnify USF & G for losses by reason of the bond, including attorney's fees. Macco subcontracted a portion of the work to Thomas Plumbing and Heating Company (Thomas). Thomas, in turn subcontracted the heating, ventilation, and air conditioning work to Barber-Colman Company (Barber-Colman). Barber-Colman subcontracted with Fogle Electric (Fogle) to do the electric work on site.
 
 
 3
 Barber-Colman began work on the project, specifically through the translation of the Army Corps of Engineers' schematics into control drawings. Michael Hendrick, Barber-Colman's application engineer, created those drawings and performed other work on the project for over eighty-five hours. Hendrick had one meeting on site with Thomas, on October 5, 1990. At that meeting changes were proposed and accepted. Hendrick incorporated those changes on October 18 and compiled a new submittal package on October 19. Based on those changes, Hendrick ordered new equipment for the project in the last week of October. The material arrived and Hendrick inventoried and warehoused it over the course of the next three weeks, ending the second week in November. There is no evidence in the record or transcript that any of this material was tendered to Macco or delivered to the site. Fogle did a small amount of work on the site at some point during November. Although Carlisle Fogle could not testify as to the exact date that Fogle was last on site, based on the billing to Barber-Colman at the end of November, Fogle testified that he "believe[d] it was around [the November] time frame." (Tr. at 23.)
 
 
 4
 In October, before the project was completed, Thomas went out of business. Because there was no direct contractual relationship between Macco and Barber-Colman, both parties were concerned about how their rights would be protected after Thomas's default. Barber-Colman refused to perform unless Macco paid the performance payment that was due under the contract between Barber-Colman and Thomas. Macco refused to pay Barber-Colman without more substantial performance. After some negotiations between Barber-Colman and Macco during which the possibility of a new subcontract was discussed, Barber-Colman sent a letter dated October 25 stating that it would not perform further until a new purchase order could be written. Macco continued to attempt to get Barber-Colman to perform up until October 31. Macco eventually sub-contracted with Johnson Controls to fill the void left by Thomas and Barber-Colman.
 
 
 5
 On January 25, 1991,[1] Barber-Colman sent Macco notice under the Miller Act. After Macco had rejected Barber-Colman's claim, Barber-Colman filed this action against USF & G, Macco's surety. USF & G impleaded Macco as a third-party defendant on the terms of the bond, claiming indemnification and its own attorney's fees. Following a one-day trial, the district court announced its judgment and opinion from the bench and found for Barber-Colman against USF & G and for USF & G against Macco.
 
 
 6
 Frank raises eight issues on appeal. As a third-party defendant, Frank is entitled to assert on appeal errors in the main case between USF & G and Barber-Colman. United States v. Lumbermens Mut. Casualty Co., 917 F.2d 654, 658 n. 5 (1st Cir.1990); Kicklighter v. Nails by Jannee, Inc., 616 F.2d 734, 738 n. 1 (5th Cir.1980). The first, whether Barber-Colman gave notice within ninety days of the last work provided on the project, is dispositive. Notice of a claim under the Miller Act is a strict condition precedent to a sub-contractor's right of recovery. United States ex rel. John D. Ahern Co. v. J. F. White Contracting Co., 649 F.2d 29, 31 (1st Cir.1981); United States ex rel. Noland Co. v. Andrews, 406 F.2d 790, 791 (4th Cir.1969).
 
 
 7
 Frank contends on appeal that the district court erred in concluding that Barber-Colman's notice of its claim was timely under the Miller Act. The Miller Act requires
 
 
 8
 [t]hat any person having direct contractual relationship with a subcontractor but no contractual relationship ... with the contractor furnishing said payment bond shall have a right of action ... upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished ... the last of the material for which such claim is made.
 
 
 9
 40 U.S.C. Sec. 270b(a) (1988). Here, Barber-Colman had a direct contractual relationship with Thomas, Macco's sub-contractor. There was no contractual relationship between Barber-Colman and Macco. Therefore, the notice provision applies to Barber-Colman's claim against the payment bond. The district court determined that "plaintiff stopped work on or about October 31," and based on this date, concluded that the January 25 letter provided timely notice. (Tr. at 169.) Because this determination turns on a legal conclusion regarding the definition of "labor" under the Miller Act, this Court conducts a de novo review of the issue.
 
 
 10
 October 31, the date the district court concluded was the operative event, is six days after the date that Barber-Colman notified Macco that it had "stopped work" and twenty-six days after the last Barber-Colman employee visited the project site. There are two possible events the district court could have considered the "last labor." The first is that Michael Hendrick, the application engineer, was providing labor for the project by receiving equipment in the Barber-Colman warehouse "from the last week in October through about the second week in November." The second is that the court considered the onsite work of Fogle, Barber-Colman's sub-contractor, sufficient to qualify as the last day of "labor" from which Barber-Colman's notice period began to run. However, neither Hendrick's off-site work as engineer, nor Fogle's on-site electrical work should provide the last "labor" date for the beginning of the Miller Act notice period.
 
 
 11
 Hendrick's work, as application engineer, is not within the definition of "labor" under the Miller Act. The word "labor" in the Miller Act includes "physical toil, but not work by a professional, such as an architect or engineer." United States ex rel. Naberhaus-Burke, Inc. v. Butt & Head, Inc., 535 F.Supp. 1155, 1158 (S.D. Ohio 1982); see also American Sur. Co. v. United States ex rel. Barrow-Agee Labs., Inc., 76 F.2d 67, 68 (5th Cir.1935) (stating in dicta that recovery under the Heard Act, ch. 231, Sec. 291, 36 Stat. 1167 (1911) (current version at 40 U.S.C. Sec. 270 (1988)), precursor to the Miller Act, would be allowed for architect who actually "superintends the work as it is done").
 
 
 12
 The only appellate court to consider the issue held that "only certain professional supervisory work is covered by the Miller Act, namely, 'skilled professional work which involves actual superintending, supervision, or inspection at the job site.' " United States ex rel. Olson v. W.H. Cates Constr. Co., 972 F.2d 987, 990 (8th Cir.1992) (quoting Butt & Head, 535 F.Supp. at 1160). Therefore, an architect or engineer " 'can only recover on the payment bond ... to the extent that [he] performed on-site services.' " Id. If Barber-Colman cannot recover for Hendrick's work under the Miller Act, then it follows that his engineering work off-site should not be the "labor" that defines the day on which the notice period begins to run. Thus, Hendrick's last on-site visit was October 5, 112 days before Barber-Colman sent notice to Macco.
 
 
 13
 There is the possibility that the district court considered as "labor" Hendrick's receipt and warehousing of parts Barber-Colman ordered pursuant to the October 5 changes on the project. If so, we decline to adopt this reasoning. Hendrick is the application engineer on the project and his additional non-supervisory duties around the Barber-Colman warehouse do not qualify as "on-site services" in order to bring them within the coverage of the Act.
 
 
 14
 Neither should the work of Fogle, Barber-Colman's sub-contractor, serve to begin the notice period. The language of the statute is clear. It states that a sub-contractor, such as Barber-Colman, has a right of action "upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material." 40 U.S.C. Sec. 270b(a) (1988) (emphasis added)." [S]uch person" refers to the particular sub-contractor, not the sub-contractor of the subcontractor. While the Miller Act is for the protection of all persons supplying labor and material in the prosecution of the work provided for in the government contract, the Supreme Court has construed the Act as excluding third-tier sub-contractors from recovery. J.W. Bateson Co. v. United States ex rel. Board of Trustees, 434 U.S. 586, 594 (1978). Fogle, as a third-tier sub-contractor would be unable to recover on its own under the Miller Act. See id.
 
 
 15
 The notice provision of the Act is designed to protect the general contractor. The purpose of the ninety-day requirement is to avoid stale claims and confusion on payment of claims when defaults occur. United States ex rel. Honeywell, Inc. v. A & L Mechanical Contractors, Inc., 677 F.2d 383, 386 (4th Cir.1982). To allow second-tier subcontractors to make claims for the work of their sub-contractors not only would defeat this goal, but also allow recovery for work Congress did not intend to cover under the Miller Act. In a situation such as this, if Barber-Colman were allowed to count Fogle's work as its own, Barber-Colman could give notice and make a claim for work that Fogle could not claim on its own. Additionally, this Court recently refused to collapse corporate forms in the Miller Act context in order to allow a use-plaintiff to recover absent reasons to "pierce the corporate veil." United States ex rel. Global Bldg. Supply, Inc. v. WNH Ltd. Partnership, 995 F.2d 515, 520 (4th Cir.1993). For the foregoing reasons, Barber-Colman cannot take advantage of the last date of labor of its sub-contractor to determine its own notice period.[2]
 
 
 16
 The district court correctly concluded that Barber-Colman should not recover for the money it paid to Fogle Electric for the work Fogle performed under its sub-contract. If the district court did not consider the work Fogle did as part of the labor and materials for which Barber-Colman could recover, then it also should not have considered Fogle's work as labor that would begin Barber-Colman's notice period.
 
 
 17
 If neither Hendrick's nor Fogle's work served to start the notice period, then the operative date must have been either Hendrick's last visit to the site or the date when Barber-Colman informed Macco that it had ceased work on the project. This issue need not be resolved because both dates are more than ninety days before Barber-Colman sent notice to Macco under the Miller Act. Therefore, Barber-Colman's notice, stipulated to be January 25, was not timely and did not preserve Barber-Colman's right of action under the Miller Act. J. F. White Contracting Co., 649 F.2d at 32; Andrews, 406 F.2d at 793. The district court's ruling concerning the timeliness of Barber-Colman's notice is reversed and the case is remanded for entry of judgment consistent with this holding.
 
 
 18
 Frank does not challenge the award of $6425 in attorney's fees to USF & G pursuant to the surety agreement. Notwithstanding the holding regarding notice under the Miller Act, the district court's award of attorney's fees to USF & G under the surety agreement is correct and accordingly, is affirmed.
 
 
 19
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 20
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 The parties stipulated that this is the date of notice. January 25 is 112 days after the last visit to the site by Barber-Colman; 92 days after the letter from Barber-Colman stating that they had suspended work on the project; 86 days after October 31, the date the court found that "plaintiff stopped work;" and approximately 75 days after the second week of November when Fogle testified they were last on the site
 
 
 [2]
 But cf. United States ex rel. H.T. Sweeney & Son, Inc. v. E.J.T. Constr. Co., 415 F.Supp. 1328 (D. Del.1976) (allowing first-tier subcontractor to use date of second-tier sub-contractor's last work for limitations period); see United States ex rel. Joseph T. Richardson, Inc. v. E.J.T. Constr. Co., Inc., 453 F.Supp. 435 (D. Del.1978) (same district court judge refusing to reconsider the position with respect to limitations and notice period). These cases are distinguishable from the case at bar. Fogle was a third-tier subcontractor whose work Barber-Colman, a second-tier sub-contractor, was trying to use as a trigger date. The issue of whether a first-tier sub-contractor can use the date of a second-tier sub-contractor's last work is not before us. Therefore, we decline to decide it. We also express no opinion on the Delaware district court's interpretation of "labor" for the purpose of timeliness of notice under the Miller Act