The UNITED STATES of America For the Use and Benefit of CONSTRUCTORS, INC., Plaintiff,

v.

GULF INSURANCE COMPANY, Defendant.

No. 203CV900.

United States District Court, E.D. Virginia, Norfolk Division.

April 9, 2004.

Stephen M. Seeger, Esquire, Quagilano & Seeger, PC, Washington, DC, Harold E. Bell, Esquire, Stokes, Timms, Bell & Vaiden, PC, Norfolk, VA, Counsel for Plaintiff.

Vivian Katsantonis, Esquire, Watt, Tieder, Hoffar & Fitzgerald, LLP, McLean, VA, Counsel for Defendant.

## OPINION AND DISMISSAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on defendant's motion to dismiss for failure to state a claim, and plaintiff's motion for leave to amend the complaint. For the reasons set forth below, plaintiff's motion to amend is

**GRANTED,** and defendant's motion to dismiss is **GRANTED.**

## I. Factual and Procedural History [1]

On or about January 31, 2002, Metropolitan Abatement Company, Inc. ("Metro"), entered into a contract with the United States Department of the Navy to provide construction, repair, and improvement of the Blades Circle Whole House on Wallops Island, Virginia. Pursuant to the terms of the contract and the Miller Act, 40 U.S.C. §§ 3131–3133 (West.Supp.2003), Metro was required to obtain a payment bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b)(2). On or about January 31, 2002, Metro entered into an agreement with defendant Gulf Insurance Company for a payment bond in the amount of $1,428,362.

On or about October 18, 2002, plaintiff Constructors, Inc., entered into a subcontract with Metro to perform administrative and oversight services on the Wallops Island project. Plaintiff met this commitment by furnishing on-site project management, supervision, administrative, and oversight services to Metro.

As work on the Wallops Island project proceeded, Metro failed to timely pay certain of its subcontractors, including plaintiff. Plaintiff agreed to pay Metro funds sufficient to pay Metro's other contractors. In exchange, plaintiff allegedly was assigned the subcontractors' rights to receive payment under the bond. Metro consented to and approved these assignments.

On or about January 13, 2003, the United States Department of the Navy terminated Metro for default. At the time of Metro's termination, plaintiff was owed $242,151.96 for its own work on the Wallops Island project and work performed by other subcontractors whose rights to payment had been assigned to plaintiff. Plaintiff timely made demand of payment from Metro and defendant for the sum owed it as a subcontractor and assignee.

On December 24, 2003, plaintiff filed its complaint. On February 6, 2004, defendant filed a motion to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] On February 25, 2004, plaintiff filed both a motion to amend the complaint and a response to defendant's motion.[3] Defendant has not responded on plaintiff's motion to amend, and has not replied on the motion to dismiss.[4] Accordingly, both motions are now ripe for review.

## II. Analysis

### A. Plaintiff's Motion to Amend

■ Plaintiff moves to amend the complaint, pursuant to Federal Rule of Civil Procedure 15(a). Under Rule 15(a), "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Defendant has not yet filed an answer to the complaint, and defendant's motion to dismiss is not a responsive pleading for the purpose of Rule 15(a). *Smith v. Blackledge,* 451 F.2d 1201, 1203 n. 2 (4th Cir. 1971). As such, plaintiff can still amend without leave of the court. *See id.* Ac-

---

1. The facts recited here are drawn from plaintiff's amended complaint.

2. By Order entered February 5, 2004, the court granted defendant's motion to extend until February 6, 2004, the time to file a responsive pleading.

3. By Order entered February 25, 2004, the court granted plaintiff's motion to extend until February 25, 2004, the time to file a response.

4. On Order entered March 9, 2004, the court denied defendant's motion to extend for an indefinite period the time to file a reply.

cordingly, the court **GRANTS** plaintiff's motion to amend.

### B. Defendant's Motion to Dismiss

■ A complaint should not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must accept the complaint's factual allegations as true and view all allegations in a light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). The court may also consider exhibits attached to the complaint. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed.1990), *cited with approval in Anheuser–Busch v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir.1995). In the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir.1991).

■ A defendant is not required to file a new motion to dismiss simply because an amended pleading was introduced while his motion was pending. 6 Charles Alan Wright *et al., Federal Practice and Procedure* § 1476, at 558 (2d ed.1990). Instead, the court may consider the motion as being addressed to the amended pleading. *Id.*

Plaintiff is claiming under the bond both as a subcontractor entitled to recompense for its own labor, and as the assignee of the rights of other subcontractors who provided labor or material to the Wallops Island project. Defendant raises three grounds for dismissal: (1) plaintiff's claim as a subcontractor is barred by the Miller Act statute of limitations; (2) plaintiff is not a proper subcontractor claimant under the payment bond; and (3) plaintiff is not a valid assignee of the rights of other subcontractors.

### 1. Statute of Limitations

Under the Miller Act, an action to enforce the rights of persons furnishing labor or material "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). Plaintiff's original complaint stated that the United States Department of the Navy terminated Metro on January 13, 2002. (Compl.¶ 10.) The complaint in this case was filed on December 24, 2003, more than one year later.

■ Plaintiff's motion for leave to amend, however, states that the date provided in the original complaint was a typographical error. Rather than January 13, *2002*, the complaint should have read January 13, *2003*. Plaintiff's amended complaint corrects the error. (Am. Compl.¶ 11.) Moreover, the amended complaint specifically alleges that plaintiff furnished labor on the Wallops Island project until the termination date. (*Id.*) Thus, plaintiff has brought this action within one year of the last day it alleges to have provided labor on the project. As such, the date provided in the complaint does not provide a basis for dismissal.

### 2. Plaintiff's Status as a Claimant Under the Payment Bond

Defendant argues that plaintiff's claim as a subcontractor should be dismissed because plaintiff did not furnish labor or material to the project, and is therefore not a proper claimant under the payment bond. Payment bonds under the Miller Act are for the benefit of "[e]very person

that has furnished labor or material in carrying out work provided for in a contract." 40 U.S.C. § 3133(b)(1). Similarly, the actual bond at issue in this case states that it is "for the protection of persons supplying labor and material." (Payment Bond at 2.)

█ Generally, the word "labor" in the Miller Act includes "physical toil, but not work by a professional, such as an architect or engineer." *United States ex rel. Naberhaus–Burke, Inc. v. Butt & Head, Inc.*, 535 F.Supp. 1155, 1158 (S.D.Ohio 1982). Only certain professional supervisory work is covered by the act, namely, "skilled professional work which involves actual superintending, supervision, or inspection at the job site." *Id.* at 1160. Thus, "the on-site supervisory work of a project manager falls within the purview of the Miller Act if such a superintendent did some physical labor at the job site or might have been called upon to do some on-site manual work in the regular course of his job." *United States ex rel. Olson v. W.H. Cates Constr. Co.*, 972 F.2d 987, 991 (8th Cir.1992).[5]

█ Plaintiff's amended complaint alleges that it "provided labor" and "furnished labor" on the Wallops Island project by "furnishing on-site project management, supervision, administrative and oversight services to Metro." (Am.Compl.¶¶ 8, 11.) More specifically, Attachment 1 to the subcontractor agreement between Metro and plaintiff defines plaintiff's duties as

> [p]erform project administrative services and interim site oversight including payment of various subcontractor and vendor invoices, review subcontractor and vendor proposals, supervise the hiring of site personnel, provide site coordination services, and recommend to Metropoli-

tan proposed management actions to complete the work.

(Am.Compl.Ex. B, Attach.1.)

Paying invoices, reviewing proposals, and supervising hiring are clerical or administrative tasks which, even if performed at the job site, do not involve the physical toil or manual work necessary to bring them within the scope of the Miller Act. Plaintiff's general allegation that it "provided labor" and "furnished labor" is not a fact but a legal conclusion, and therefore without weight in a Rule 12(b)(6) determination. Moreover, when the bare allegations of a complaint conflict with an attached exhibit, the exhibit prevails. *Fayetteville Investors*, 936 F.2d at 1465. As the clerical or administrative services listed in the attached exhibit are not "labor" within the contemplation of the Miller Act, plaintiff is not a proper subcontractor claimant under the payment bond.

### 3. *Plaintiff's Claims as Assignee*

█ In addition to payment under the bond for its own labor on the Wallops Island project, plaintiff is also claiming payment for the labor and material of other subcontractors whose rights were allegedly assigned to plaintiff. A valid assignee may properly claim payment under a Miller Act bond. *See United States ex rel. Sherman v. Carter*, 353 U.S. 210, 219, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957) ("[A]ssignees of the claims of persons furnishing labor or material c[o]me within the protection of the statutory bond.").

█ Defendant argues that if plaintiff was assigned any rights under the bond, they were the rights of Metro. The parties agree that Metro has no right to payment under the bond. (Def.'s Mem. at 9;

---

**5.** Both *Naberhaus–Burke* and *Olson* were cited with approval in an unpublished decision of the Fourth Circuit, *United States ex rel.*

*Barber–Colman Co. v. U.S. Fid. & Guar. Co.*, 1994 WL 108502, 1994 U.S.App. LEXIS 6050 (4th Cir. Mar. 31, 1994).

Pl.'s Resp. at 4.) Plaintiff counters that it did not take assignment of Metro's rights, but rather the rights of Metro's subcontractors. (Pl.'s Resp. at 4.) No document purporting to assign rights under the payment bond has been presented to the court.

Paragraph Eleven of the Amended Complaint states:

> Constructors agreed to pay Metro sums necessary to pay its other subcontractors in return for a full and complete assignment of all right, title and interest in the payments due to such subcontractors and any and all right to payment under the Bond. Metro consented and approved such assignment.

(Am.Compl. ¶ 11.)

Paragraph Eleven does not state that Metro's subcontractors participated in the loan transaction at issue, or agreed to assign their rights under the payment bond. Instead, Paragraph Eleven indicates that Metro assigned to plaintiff the rights of Metro's subcontractors. The amended complaint offers no explanation why Metro would be able to assign rights belonging not to it, but to its subcontractors.

■ Moreover, the amended complaint itself refutes the claim that Metro's subcontractors had any right to payment under the bond. A Miller Act payment bond protects "[e]very person that has furnished labor or material ... and that has not been paid in full." 40 U.S.C. § 3133(b)(1). The amended complaint states that "Constructors agreed to pay Metro sums necessary to pay its other subcontractors." (Am.Compl. ¶ 10.) Subcontractors who were paid in full by Metro can have no claim for payment under the bond. Thus, even assuming that plaintiff received a valid assignment of rights, there were no rights to assign.

### III.  Conclusion

For the reasons set forth above, plaintiff's motion for leave to amend the complaint is **GRANTED**, and defendant's motion to dismiss is **GRANTED**. The Clerk is **DIRECTED** to send a copy of this Opinion and Dismissal Order to counsel for the parties.

**IT IS SO ORDERED.**