United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 4, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

06-60906
Summary Calendar

---

UNITED STATES OF AMERICA
for the use and benefit of ROY SHANNON,

Plaintiff-Appellant,

v.

FEDERAL INSURANCE COMPANY; FIDELITY & DEPOSIT COMPANY OF
MARYLAND; WHITESELL-GREEN INC., Individually and jointly with
W.G. Yates & Sons Construction Co., a Mississippi Corporation;
W.G. YATES & SONS CONSTRUCTION CO., Individually and jointly
with Whitesell-Green Inc., a Florida Corporation,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Mississippi, Gulfport
1:05-CV-54

---

Before HIGGINBOTHAM, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiff Roy Shannon ("Shannon") was employed as a project

manager at Whitesell-Green, Inc. ("WGI"). WGI entered into a joint

venture ("Joint Venture") with another company, W.G. Yates & Sons

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Construction Company ("Yates"), so that they could pool their resources and bid on construction contracts at Keesler Air Force Base in Biloxi, Mississippi ("Keesler"). Shannon assumed the position of project manager for the Joint Venture. He was put on the Joint Venture's payroll in October of 1998. Shannon remained the project manager of the Joint Venture at Keesler until February 2004, when he was terminated.

Shannon's contract with the Joint Venture was unwritten, and though the parties to this case all agree that a contract existed, they disagree about the terms. It is undisputed that Shannon's position carried a salary of $2,000 per week, plus an annual Christmas bonus of at least $50,000. It is also undisputed that Shannon received this sum for approximately five and a half years. However, Shannon claims that he was entitled to receive additional compensation of three types. First, he claims that he was entitled to one-half the profits above and beyond the originally anticipated profits, if any, earned by the Joint Venture on the first project. Second, he says that once the Joint Venture began to bid on additional contracts, there was an unwritten agreement that he would receive one percent of the contract amount of each subsequent contract, regardless of profit. Third, Shannon says that an SUV, which was purchased by the company but used exclusively by him, was his to keep, and that the Joint Venture breached its unwritten agreement by repossessing the vehicle some six months after his termination. Having not received the compensation to which he

believed he was entitled, Shannon filed this lawsuit, asserting claims for breach of contract, quantum meruit, and wrongful discharge.

Shannon also included a federal claim under the Miller Act, 40 U.S.C. §§ 3131, 3133, which explains how an otherwise ordinary contract case, raising several questions of Mississippi state law, ended up in federal court. Under the Miller Act, before any contract of more than $100,000 for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person is required to furnish to the United States both a performance bond and a payment bond. The performance bond guarantees federal taxes on wages paid by the contractor to his or her employees. The payment bond is "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person." 40 U.S.C. § 3131(b)(2). The purpose of the Act is "to protect those whose labor and materials go into public projects," *MacEvoy Co. v. United States*, 322 U.S. 102, 107 (1944) (citations omitted). On this basis, Shannon brought a federal claim against the sureties charged with protection of the payment bond.

The district court granted summary judgment for the defendants on all four of Shannon's claims, and Shannon appealed. We review motions for summary judgment *de novo*, applying the same standards as the district court. FED R. CIV. P. 56. Summary judgment is

inappropriate whenever a genuine issue of material fact exists. A genuine issue of material fact exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). All evidence must be construed in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (citations omitted).

### 1. Breach of Contract

The district court granted summary judgment on Shannon's breach of contract claim after finding that it was barred by the statute of limitations. There is no dispute that the relevant limitations period for breach of an unwritten contract is one year from the time the cause of action accrued. Miss. Code § 15-1-29 (1972). The only dispute is the date of accrual. In Mississippi, a cause of action accrues as soon as the cause of action exists. *See, e.g.*, *Greenlee v. Mitchell*, 607 So.2d 97, 110 (Miss. 1992). In breach of contract cases, that is the time "when the *breach*, not the *injury*, accrues," or, in other words, "at the time of the breach regardless of when damages resulting from the breach occur." *First Trust Nat'l Ass'n v. First Nat'l Bank of Commerce*, 220 F.3d 331, 334–35 (5th Cir. 2000). Because the plaintiff, in effect, is alleging two different breaches, one for the first project and one for all subsequent projects, we treat them separately.

4

As to the first project, Shannon claims that he was entitled to one half of the profits above and beyond $2.5 million, which was the original estimated profit. As of September 29, 2003, Shannon knew that the operation would be more profitable than originally anticipated, and thus that he was entitled to some gain. However, at that point Shannon says he could not have known exactly *how* profitable the project would be, and thus could not know exactly how much money he would receive. Instead, he argues that the accrual date is the date the project was physically completed, which occurred some time in December of 2004. Shannon did not file his lawsuit until February, 2, 2005.

We find Shannon's argument unavailing. First, the foregoing case law makes plain that the date of breach, not the date of injury (or, in Shannon's case, the date on which the full extent of the injury was finally calculable) is the controlling date for accrual purposes. Shannon has presented no case law to support the proposition that a party must know to a mathematical certainty the amount of recovery to which he is entitled. In fact, the analogous case law in Mississippi suggests otherwise. *See, e.g.*, *Jackson v. State Farm Mut. Auto. Insur. Co.*, 880 So.2d 336, 341 (Miss. 2004) (holding, in uninsured motorist context, that action accrues once someone "knows, or reasonably should know, that the damages he or she claims to have suffered exceed the limits of insurance available to the alleged tortfeasor"). Second, we must note that

5

Shannon drastically overstates his uncertainty as of September 2003. Shannon stated in his response to an interrogatory that on September 29, 2003, he knew "as a fact [that] 99% of the job costs were complete," because he "was provided a written copy of the profits from Yates." At that time, then, Shannon had nearly perfect knowledge of the amount of money to which he was purportedly entitled, and he further knew that so long as the defendants had not paid him his due, they were in breach of the unwritten contract. In fact, he stated in both his complaint and his deposition that he had made repeated demands on the Joint Venture to pay him what he was owed on the first project since August of 2000, or roughly four and a half years before he filed this lawsuit. In sum, the record clearly indicates that any breach as to the first project occurred more than a year before the suit was filed, and that Shannon knew as much. Summary judgment was therefore proper.

Summary judgment was also proper as to the additional projects. Shannon alleges that he was to receive one percent of the contract price of each additional project that he secured for the Joint Venture. Under the terms of the agreement, Shannon would be entitled to payment once the contracts were awarded. The Joint Venture won several additional contracts, the last of which came on December 29, 2003. Any breach as to these additional projects therefore occurred more than a year before this suit was filed, and

6

summary judgment was proper.[1]

## 2.  The Miller Act

As we have said, the Miller Act protects those "whose labor and materials go into public projects." *MacEvoy Co. v. United States*, 322 U.S. 102, 107 (1944) (citations omitted).  Shannon's claim under the Act turns on whether or not he performed "labor" as that term is used in the statute.  The district court found that he did not, and we agree.  Shannon concedes that any duties he was required to perform as project manager are irrelevant for purposes of the Miller Act because he was already compensated for them.  The Miller Act only affords him relief if he performed additional labor for which he was not compensated.  Shannon alleges that he did perform such additional duties, which he describes as "negotiating new contracts, determining bid amounts and change orders, preparing bid proposals, negotiating and signing new subcontracts and purchase orders."  He also claims that his labor included living on the job site, cleaning the office and bathrooms, and other such tasks.

The term "labor" in the Miller Act was primarily designed to encompass physical or manual labor.  *See United States ex rel. Constructors, Inc. v. Gulf Ins. Co*, 313 F. Supp. 2d 593, 597 (E.D.

---

[1]Shannon's claim for equitable estoppel as to the statute of limitations is similarly unavailing.  The record does not reveal any representations on the part of the Joint Venture that could reasonably have induced Shannon's reliance to his own detriment.

Va. 2004) (holding that "[p]aying invoices, reviewing proposals, and supervising hiring are clerical or administrative tasks which, even if performed at the job site, do not involve the physical toil or manual work necessary to bring them within the scope of the Miller Act"); *see also United States for the Use of Barber-Colman Co. v. United States Fid. & Guar.* Co., 19 F.3d 1431 (4th Cir. 1994) (unpublished opinion) (noting that "labor" includes "physical toil, but not work by a professional, such as an architect or engineer" (internal quotation omitted)); *United States ex rel. Olson v. W.H. Cates Constr. Co., Inc.*, 972 F.2d 987, 990 (8th Cir. 1992) ("[O]nly certain professional supervisory work is covered by the Miller Act, namely, skilled professional work which involves actual superintending, supervision, or inspection at the job site." (internal quotation omitted)); *Glassell-Taylor Co. v. Magnolia Petroleum Co.*, 153 F.2d 527, 529–30 (5th Cir. 1946) (discussing purpose of Act and surveying cases of qualifying labor, all of which are manual or physical in nature). The additional labor that Shannon claims to have provided does not match this description. Moreover, any potentially qualifying "supervisory" work that he might have provided at the site fell under his role as a project manager, and he has already been compensated for it. Summary judgment was therefore proper as to Shannon's Miller Act claim.

3.  Quantum Meruit

Shannon proffers an alternative theory under quantum meruit,

in the event that a contract is not found to exist. Because the district court found, by the parties' own admissions, that an enforceable agreement *did* exist, it denied any recovery under quantum meruit, noting that under Mississippi law, "[w]here there is a contract, parties may not abandon same and resort to quantum meruit." *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So.2d 954, 970 (Miss. 1990) (internal quotation omitted). On appeal, Shannon argues that the parties do *not* concede that a contract exists. His argument seems to be that the purported agreements for additional compensation were *new* contracts, that the defendants deny their existence, and therefore that recovery is available in quantum meruit. We are not persuaded. Clearly the parties all admit that an enforceable contract existed; they simply dispute some of its terms. On the basis of that contract, Shannon provided services to the Joint Venture for over five years, during which time he collected payment in excess of $2,000 per week, plus an annual bonus. He now claims that, under the terms of that contract, was entitled to more. That is a contract claim, plain and simple, and had Shannon filed it in time, it would have been actionable. Having failed to do so, however, he cannot now sidestep that agreement and pursue a theory of quantum meruit. Summary judgment was proper as to this claim.

### 4. Wrongful Discharge

Finally, Shannon includes a claim for wrongful discharge. The

district court dismissed this claim on the basis that Shannon was an "at will" employee, and thus cannot bring a suit for wrongful discharge under Mississippi law. *See Levens v. Campbell*, 733 So.2d 753, 760 (Miss. 1999) ("[A]bsent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting reasons only declared legally impermissible."); *see also Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss. 1987) (explaining longstanding rule that "at will" employment is inferred where there is no contract of employment or contract does not specify definite term of employment). Shannon's contract of employment did not expressly specify a definite term, rendering him an "at will" employee. Thus, the district court properly granted summary judgment as to this claim.

CONCLUSION

For the reasons stated herein, the district court's grant of summary judgment is AFFIRMED.