Jorge Jose SWEET, Plaintiff,

v.

**NORTHERN NECK REGIONAL JAIL and Sgt. Baserap, Defendants.**

No. 1:12cv38 (GBL/TRJ).

United States District Court,
E.D. Virginia,
Alexandria Division.

April 18, 2012.

Jorge Jose Sweet, Jonesville, VA, pro se.

*MEMORANDUM OPINION
AND ORDER*

GERALD BRUCE LEE, District Judge.

Jorge Jose Sweet, who apparently is now residing in Washington, D.C., has filed a civil rights action, pursuant to 42 U.S.C. § 1983, seeking damages for being prevented from praying in Arabic during Jumah prayer services at the Northern Neck Regional Jail ("NNRJ"). Plaintiff has submitted an application to proceed *in forma pauperis* in this action. After re-

viewing plaintiff's complaint, the claims against defendants must be dismissed pursuant to 28 U.S.C. § 1915A(e)(2)(B)(ii) for failure to state a claim.[1]

## I.

Plaintiff alleges that on Friday, December 23, 2011, Sgt. Baserap stated that NNRJ inmates could not use the Arabic language in conducting their Jumah prayer service in the chapel. Plaintiff asserts that inmates are allowed to practice their religions so long as it does not interfere with any safety hazard or promote terrorism, and on the date in question neither of those actions occurred. Plaintiff describes himself as a "5 year devoted Sunni Muslim" who practice[s] peace not terrorism," and that "[e]very Friday at a specific time the Arabic language is being used around the world to conduct Jumah prayer."

Plaintiff has supplied a copy of a grievance he submitted on December 29, 2011, seeking the ability to "be able to practice [his] religion how it was taught to" him. On December 30, a Captain responded:

> Mr. Sweet, due to their [sic] being several different housing units and classification levels congregating together, the Jail does not allow the services or prayers to be spoken in Arabic, it must be spoken in English. However, the Jail will allow you to pray in Arabic in your housing unit if you like but not in the library as a group.

In this action pursuant to § 1983, plaintiff names as defendants the NNRJ and Sgt. Baserap. He seeks an award of monetary damages in the amount of $250,000.

## II.

In reviewing a complaint pursuant to § 1915(e), a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9 F.Supp.2d 641, 642 (E.D.Va.1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, *id.,*

---

1. Section 1915(e) provides:
   (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that
   (A) the allegation of poverty is untrue; or
   (B) the action or appeal—
   (i) is frivolous or malicious;
   (ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.
   This provision governs *in forma pauperis* filings in addition to complaints filed by prisoners. *See Michau v. Charleston County, S.C.,* 434 F.3d 725 (4th Cir.), *cert. denied,* 548 U.S. 910, 126 S.Ct. 2936, 165 L.Ed.2d 961 (2006).

and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level ...". *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 129 S.Ct. at 1949–1950.

Court may also consider exhibits attached to the complaint. *United States ex rel. Constructors, Inc. v. Gulf Ins. Co.,* 313 F.Supp.2d 593, 596 (E.D.Va.2004) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed. 1990)). Moreover, where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." *Gulf Ins. Co.,* 313 F.Supp.2d at 596 (citing *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir.1991)).

## III.

■ To state a cause of action under § 1983, a plaintiff must allege facts indicating he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Since the NNRJ is not a "person" within the meaning of this authority, it can have no liability to plaintiff under § 1983 for the harm he asserts, and plaintiff's claim against it is subject to dismissal pursuant to § 1915A(e)(2)(B)(ii) for failure to state a claim.

As to plaintiff's claim against Sergeant Baserap, plaintiff in this case is not the first NNRJ detainee to challenge its policy of not allowing inmates to speak in Arabic during communal Jumah prayer services. In *McCoy v. Frazier,* 2010 WL 2975747 (E.D.Va. July 6, 2010) (Davis, J.), an inmate alleged as plaintiff does here that an officer ended Jumah prayer services at NNRJ because they were being said in Arabic. Consistent with the response to plaintiff's grievance in this case, Plf. Ex. 1, the Court noted in *McCoy* that NNRJ has a policy that allows Muslin inmates from different housing units and security levels to congregate for Jumah services. However, because the inmates are of different housing units and security levels, they must be supervised and they may not speak in Arabic, because NNRJ has no officers who speak Arabic. Evidence presented in *McCoy* indicated that "NNRJ's policy requiring Jumah prayers to be in English stems from the concern that inmates could plot riots, escapes, or espouse extremism, and officers would be unable to understand what was being said." 2010 WL 2975747 at *1. However, as is also indicated by plaintiff's exhibit in this case, "[t]his policy only applies when inmates from different housing units and of different security levels are together. In their housing units, inmates may gather to worship and pray in Arabic." *Id.*

■ It is well established that a prisoner's sincere desire to practice a religion may be burdened upon a showing that the restriction is reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). The Supreme Court has outlined three factors for lower courts to weigh in evaluating constitutional challenges to prison regulations: (1) a regulation must have a logical connection to the legitimate penological or governmental interests invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates' rights should not severely impact other inmates, prison officials, and the general allocation of prison resources. *O'Lone,* 482 U.S. at 350–52,

107 S.Ct. 2400. The Court in *McCoy* applied these factors in rejecting the same claim plaintiff makes here:

> The policy that Plaintiff challenges—that when inmates from different housing units and of different security levels are together, they must be supervised and they may not speak in a language that the person who is supervising the gathering cannot understand—is based on security concerns. The policy is logically connected to valid security concerns. When inmates from different housing units and security levels are allowed to gather together, it is important that they not be allowed to surreptitiously plan anything that might present a security risk. Therefore, it is a reasonable policy that they be monitored. *Tisdale v. Dobbs*, 807 F.2d 734, 738 (8th Cir.1986) (upholding district court's finding that 'the threat of unsupervised group prayer meetings becoming forums for dissension and unrest' was supported by an historical occurrence of just such an event).
>
> \* \* \*
>
> The policy is limited to only those instances when inmates from *different* housing units and custody levels are gathered together. Such gatherings present a wholly different security risk than gatherings of inmates from one housing unit or security level.... Inmates from different housing units and custody levels could conceivably plan an institution-wide action, such as a riot. While a riot can certainly be planned in a given housing unit, a riot contained to a single housing unit would not present as much danger as an institution-wide riot. This is a reasonable restriction, particularly considering NNRJ's efforts to accommodate prisoners' desire to gather with others of their faith. For example, Muslim inmates are allowed the unprecedented privilege of gathering together from different housing units and security levels. The only restriction is that these gatherings be monitored and that inmates not speak Arabic.
>
> ¶
>
> The policy also allows inmates an alternative method of practicing their religion. Muslim inmates in a given housing unit may gather *within* their housing unit for Jumah services and pray in Arabic. The policy is narrowly tailored to alleviate the worst security concerns, while still allowing inmates to pray in Arabic when they are in their own housing unit. Therefore, plaintiff's free exercise of his First Amendment rights has not been substantially burdened.

*McCoy*, 2010 WL 2975747 at \*3–\*4, emphases original.

Under these circumstances, plaintiff's complaint must be dismissed for failure to state a claim for which § 1983 relief is available. It is true that the decision in *McCoy* was rendered at the summary judgment stage of the litigation, and the Court in that instance thus was able to consider affidavits filed by the defendants in support of their position. *Id.* at \*1. However, the factual determinations reflected in the passages quoted above are entirely consistent with the response to plaintiff's grievance that he has submitted as an exhibit to his complaint in this case. That is to say, the NNRJ policies described in *McCoy* of requiring services or prayers to be spoken in English when inmates from different housing units and classification levels congregate together, but allowing prayers to be offered in Arabic within individual housing units, remained in place at the time relevant to plaintiff's complaint. Plf. Ex. 1: *Gulf Ins. Co.*, 313 F.Supp.2d. at 596 (courts may credit facts disclosed in exhibits attached

to complaint). For the reasons expressed by the Court in *McCoy*, those policies are reasonably related to legitimate penological interests and do not substantially burden inmates' rights to free exercise of their First Amendment rights. *Cf. O'Lone*, 482 U.S. at 349, 107 S.Ct. 2400. Accordingly, plaintiff fails to state a claim for which § 1983 relief is available, and this complaint will be dismissed for failure to state a claim.

Accordingly, it is hereby

ORDERED that this action be and is DISMISSED WITH PREJUDICE for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that plaintiff's application to proceed *in forma pauperis* (Docket # 2) be and is DENIED as moot; and it is further

ORDERED that plaintiff is advised that, pursuant to 28 U.S.C. § 1915(g),[2] this dismissal may affect his ability to proceed *in forma pauperis* in future civil actions; and it is further

ORDERED that the Clerk record this dismissal for purposes of the Prison Litigation Reform Act.

To appeal, plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. *See* Fed. R.App. P. 4(a). A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal. Plaintiff need not explain the

grounds for appeal until so directed by the court.

---

2.  28 U.S.C. § 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facili-ty, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.